UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

               Plaintiffs,

               -against-                               **OPINION & ORDER**
                                                           09-CR-619 (SJF)

ANTONIO RIVERA, JASMIN RIVERA, JOHN
WHALEY and JASON VILLAMAN,

               Defendants.
----------------------------------------------------------X

FEUERSTEIN, J.

Defendant John Whaley ("Whaley") moves pursuant to Rules 12, 12.1 and 14 of the Federal Rules of Criminal Procedure for an order, *inter alia*: (1) dismissing certain counts of the superceding indictment (a) as multiplicitous or (b) as charging crimes that were not legally in effect at the time charged; (2) severing his trial from his co-defendants[1]; (3) directing disclosure of material by the government pursuant to Brady v. Maryland, 373 U.S. 83 (1963) ("Brady material"); and (4) allowing him to reserve his right to present an alibi defense.[2] Defendant Jason Villaman ("Villaman") joins in Whaley's motion and also seeks to sever his trial from his co-defendants' trial. Defendant Antonio Rivera ("A. Rivera") joins in the branch of Whaley's

---

[1] By order entered April 7, 2010, the branches of the prior motions of Whaley and defendants Antonio Rivera and Jasmin Rivera ("J. Rivera") seeking to sever their respective trials from the trials of their co-defendants were denied.

[2] In a letter to the court dated March 28, 2011 submitted in reply to the government's opposition to Whaley's motion, counsel for Whaley also renews her request for a bill of particulars, which had previously been denied by the April 7, 2010 order.

1

motion seeking dismissal of certain counts of the superceding indictment as multiplicitous.[3]

I.     DISMISSAL OF INDICTMENT

    A.     Relevant Counts in the Superceding Indictment

        1.     Conspiracy to Commit Sex Trafficking

Count one (1) of the superseding indictment filed on October 5, 2010 charges each of the defendants with conspiracy to commit sex trafficking by means of force, fraud and coercion from on or about July 1, 2005 through on or about December 23, 2008 in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1591(a) (2008).

Count fourteen (14) of the superceding indictment charges Whaley, A. Rivera and J. Rivera with conspiracy to commit sex trafficking from on or about December 23, 2008 through on or about August 10, 2009, in violation of, *inter alia*, 18 U.S.C. §§ 1594(c) and 1591(a) (2009)[4].

        2.     Sex Trafficking

Counts three (3) through five (5) of the superceding indictment charge Whaley, A. Rivera and J. Rivera, and counts two (2)[5] and three (3) of the superceding indictment charge Villaman, with sex trafficking by means of force, fraud and coercion from on or about September 1, 2005

---

[3] J. Rivera has neither separately moved for any relief, nor joined in Whaley's motion.

[4] 18 U.S.C. § 1591 was amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122 Stat. 5044, Title II, § 222(b)(5), enacted on December 23, 2008.

[5] Count (2) of the superceding indictment also charges A. Rivera with sex trafficking.

2

through on or about December 23, 2008 in violation of, *inter alia*, 18 U.S.C. § 1591(a) (2008). Specifically, those counts of the superceding indictment charge, *inter alia*, that each respective defendant, together with others, "did knowingly and intentionally (a) recruit, entice, harbor, transport, provide and obtain [certain] persons identified [in the indictment], in and affecting interstate and foreign commerce, and (b) benefit, financially and by receiving things of value, from participation in a venture which had engaged in one or more such acts, knowing that force, fraud and coercion * * * would be used to cause such persons to engage in one or more commercial sex acts, * * *."

Counts fifteen (15) through seventeen (17) of the superceding indictment charge Whaley, A. Rivera and J. Rivera with sex trafficking by means of force, fraud and coercion, from on or about December 23, 2008 through on or about August 10, 2009, in violation of, *inter alia*, 18 U.S.C. §1591(a) (2009). Specifically, those counts charge, *inter alia*, that those defendants, together with others, "did knowingly and intentionally (a) recruit, entice, harbor, transport, provide, obtain *and maintain* [certain] persons identified [in the indictment], in and affecting interstate and foreign commerce, and (b) benefit, financially and by receiving things of value, from participation in a venture which had engaged in one or more such acts, knowing, *and in reckless disregard of the fact*, that *means of force, threats of force*, fraud, coercion * * *, *and a combination of such means* would be used to cause such persons to engage in one or more commercial sex acts, * * *."[6]

---

[6] Differences between the crime of sex trafficking charged in counts three (3) through five (5) of the superceding indictment under the statute prior to the enactment of the TVPRA and that charged in counts fifteen (15) through seventeen (17) of the superceding indictment under the statute as amended by the TVPRA are italicized.

3

### 3. Conspiracy to Commit Forced Labor

Count six (6) of the superceding indictment charges each of the defendants with conspiracy to commit forced labor from on or about July 1, 2005 through on or about December 23, 2008, in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589 (2008).

Count eighteen (18) of the superceding indictment charges Whaley, A. Rivera and J. Rivera with conspiracy to commit forced labor from on or about December 23, 2008 through on or about August 10, 2009, in violation of, *inter alia*, 18 U.S.C. §§ 1589(d) and 1594(b) (2009)[7].

### 4. Forced Labor

Counts eight (8) through thirteen (13) of the superceding indictment charge Whaley, A. Rivera and J. Rivera, and counts seven (7)[8] and eight (8) of the superceding indictment charge Villaman, with forced labor from on or about September 1, 2005 through on or about December 23, 2008, in violation of, *inter alia*, 18 U.S.C. §1589 (2008). Specifically, counts eight (8) through thirteen (13) of the superceding indictment charge, *inter alia*, that each respective defendant, together with others, "did knowingly and intentionally obtain the labor and services of [certain] persons identified [in the superceding indictment], (a) by threats of serious harm to, and physical restraint against, those persons and other persons, (b) by means of a scheme, plan and pattern intended to cause those persons to believe that, if those persons did not perform such labor and services, those persons and other persons would suffer serious harm and physical restraint, and (c) by means of the abuse and threatened abuse of law and the legal process * * *."

---

[7] 18 U.S.C. § 1589 was amended by the TVPRA, Pub. L. 110-457, Title II, § 222(b)(3).

[8] Count seven (7) of the superceding indictment also charges A. Rivera with forced labor.

4

Counts nineteen (19) through twenty-four (24) of the superceding indictment charge Whaley, A. Rivera and J. Rivera with forced labor from on or about December 23, 2008 through on or about August 10, 2009, in violation of, *inter alia*, 18 U.S.C. §1589 (2009). Specifically, counts nineteen (19) through twenty-four (24) of the superceding indictment charge, *inter alia*, that Whaley, A. Rivera and J. Rivera, together with others, "did knowingly and intentionally *(a) provide and* obtain the labor and services of [certain] persons identified [in the superceding indictment] * * *, *by means of (i) force, threats of force, physical restraint and* threats of physical restraint *to* those persons and other persons, *(ii) serious harm and* threats of serious harm to those persons and other persons, *(iii)* the abuse and threatened abuse of law and *[]* legal process, *and (iv)* a scheme, plan and pattern intended to cause those persons to believe that, if *they* did not perform such labor and services, those persons and other persons would suffer serious harm *[]*, *and (b) benefit, financially and by receiving things of value, from participation in a venture, which had engaged in the providing and obtaining of labor and services by any of such means * * *.*"[9]

B. Multiplicitous Counts

1. Double Jeopardy

Whaley contends that the following counts in the superceding indictment are multiplicitous because they charge the same offense: (a) counts one (1) and fourteen (14)

---

[9] Differences between the crime of forced labor charged in counts eight (8) through thirteen (13) of the superceding indictment under the statute in effect prior to enactment of the TVPRA and that charged in counts nineteen (19) through twenty-four (24) of the superceding indictment under the statute as amended by the TVPRA are italicized.

(conspiracy to commit sex trafficking); (b) counts six (6) and eighteen (18) (conspiracy to commit forced labor); (c) counts three (3) through five (5) and fifteen (15) through seventeen (17) (sex trafficking); and (d) counts eight (8) through thirteen (13) and nineteen (19) through twenty-four (24) (forced labor). According to Whaley, the multiplicitous counts must be dismissed as violative of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[10]

The Double Jeopardy Clause of the Fifth Amendment not only protects criminal defendants from a second prosecution for the same offense after acquittal or conviction, but also protects against multiple punishments for the same offense. See United States v. Josephberg, 459 F.3d 350, 354-5 (2d Cir. 2006). "An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999); see also United States v. Zvi, 168 F.3d 49, 57 (2d Cir. 1999) ("An indictment is multiplicitous when it charges a single offense in more than one count.") "It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'- in the legal sense, as defined by Congress- complained of in one count is the same as that charged in another." Chacko, 169 F.3d at 146. To determine whether an indictment is multiplicitous, courts must examine the statutes defining the offenses charged under the test set forth by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932) ("the

---

[10] To the extent Villaman joins in this branch of Whaley's motion, that branch of his motion is denied because, *inter alia*, none of the purportedly multiplicitous counts (counts fourteen (14), eighteen (18), fifteen (15) through seventeen (17) and nineteen (19) through twenty-four (24)) charge him with any crimes.

6

Blockburger test"), to determine "whether each charged offense contains an element not contained in the other charged offense." Chacko, 169 F.3d at 146. "If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted." Id.; see also United States v. Finley, 245 F.3d 199, 205 (2d Cir. 2001) (holding that under the Blockburger test, the court must determine whether each statutory provision "requires proof of a fact which the other does not.")

Nonetheless, "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed." Josephberg, 459 F.3d at 355.

> "'[I]f, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense.' Ball v. United States, 470 U.S. 856, 860, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). If the jury convicts on no more than one of the multiplicitous counts, there has been no violation of the defendant's right to be free from double jeopardy, for he will suffer no more than one punishment. If the jury convicts on more than one multiplicitous count, the defendant's right not to suffer multiple punishments for the same offense will be protected by having the court enter judgment on only one of the multiplicitous counts. * * *. Or, if judgment of conviction has been entered on more than one such count, the district court should vacate the conviction on all but one."

Id. Accordingly, dismissal of a count in an indictment as multiplicitous prior to trial is generally premature. See id. (concluding that the district court's dismissal of a count in the indictment as multiplicitous prior to trial was "at best premature.")

Since it is possible that the jury will convict defendants on only one (1) of the respective counts that they allege are multiplicitous[11], and acquit defendants on all of the counts with which

---

[11] Contrary to Whaley's defense counsel, the government does not concede that the counts are multiplicitous. Rather, the government declines to address the issue of multiplicity, "assuming [multiplicity] *arguendo.*" The government instead correctly contends, *inter alia*, that

7

they allege that count is multiplicitous, the issue of whether the counts are multiplicitous in violation of the Double Jeopardy Clause is premature at the pretrial stage. See Josephberg, 459 F.3d at 356 (declining to reach the question of whether a count in the indictment was multiplicitous since dismissal of that count at the pretrial stage was premature). In the event that the jury finds any defendant guilty of more than one (1) count alleged to be multiplicitous, that defendant may renew his motion to dismiss the allegedly multiplicitous count(s) as violative of the Double Jeopardy Clause. See, e.g. id. ("In the event that the jury returns verdicts of guilty on Count 16 and on any other count with which [the defendant] contends Count 16 is multiplicitous, the district court may revisit the question of multiplicity, * * *.")

2. Election of Statutes

To the extent that Whaley seeks to compel the government to elect under which statutes it will prosecute defendants, his motion is denied. Although district courts have the discretion to compel prosecutors to elect under which one (1) of two (2) or more multiplicitous counts they will seek to prosecute a defendant and to dismiss all but the one elected count when inclusion of the multiplicitous counts will prejudice the defendant, see United States v. Reed, 639 F.2d 896, 905 n. 6 (2d Cir. 1981); see also United States v. Platter, 514 F.3d 782, 786 (8th Cir. 2008); United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990), that discretion must be balanced against the government's "broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." Ball, 470 U.S. at 859, 105 S.Ct. 1668; see also United States v. Ashley Transfer & Storage Co., Inc., 858 F.2d 221, 224 (4th Cir. 1988)

---

the issue of multiplicity is premature at the pretrial stage.

8

("[C]ourts are not free to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." (quotations and citations omitted)). Moreover, "[t]he purpose underlying the practice of requiring in proper cases that the prosecution elect between offenses or counts is to prevent prejudice to the accused which might result from being required to meet a multiplicity of charges in one trial. It has no application to a case where the different counts are merely variations or modifications of the same charge." United States v. Maryland State Licensed Beverage Association, 240 F.2d 420, 422 (4th Cir. 1957). There can be "no possible prejudice to the accused in going to trial under an indictment charging in separate counts that conduct complained of constituted violations of [amended] sections of the [same statutes]; and to require such an election [is] to prejudice the prosecution in the presentation of its case and * * * [does not constitute] a sound exercise of discretion." Id.

Whaley has not demonstrated that either he or any of the other defendants will be prejudiced by a failure to compel the government to elect between the allegedly multiplicitous counts in the superceding indictment, which charge in separate counts that the conduct of defendants violated the same statutes both pre- and post-enactment of the TVPRA. The only prejudice alleged by Whaley is that inclusion of the allegedly multiplicitous counts "bloated" the superceding indictment, "falsely suggest[ing] to the jury that multiple crimes have been committed * * *." (Gaffey Ltr., p. 3). However, any such prejudice can be simply cured by, *inter alia*, an appropriate instruction to the jury. Accordingly, this branch of Whaley's motion is denied.

### C. Effective Date of the TVPRA

Whaley contends that the amendments to 18 U.S.C. §§ 1589 and 1591 that were enacted on December 23, 2008 as part of the TVPRA did not become effective until one hundred eighty (180) days later, i.e. on June 29, 2009. According to Whaley, counts fifteen (15) through seventeen (17) and nineteen (19) through twenty-four (24), charging him with crimes committed "on or about and between December 23, 2008 and August 10, 2009," must therefore be dismissed as defective.

Contrary to Whaley's contention, the amendments to 18 U.S.C. §§ 1589 and 1591 by the TVPRA, Pub. L. 110-457, Title II, §§ 222(b)(3) and (5), respectively, became effective on December 23, 2008, the date of enactment of the TVPRA. The only provision of the TVPRA that did not take effect until one hundred eighty (180) days after its enactment was Title IV thereof, entitled "Child Soldiers Prevention Act of 2008," Pub. L. 110-457, Title IV, Sec. 407. Accordingly, the branch of Whaley's motion seeking dismissal of counts fifteen (15) through seventeen (17) and nineteen (19) through twenty-four (24) of the superceding indictment as defective is denied.

## II. SEVERANCE OF TRIAL

Whaley seeks to sever his trial from the trial of his co-defendants on the basis that "some of the evidence the government will seek to present against the other defendants is significant and incendiary" and that "the prejudicial spill-over effect is inevitable and will deprived [sic] [him] of a fair trial." (Declaration of Tracey L. Eadie Gaffey [Gaffey Decl.], p. 5). Villaman also seeks to sever his trial from his co-defendants on the basis that he was indicted

10

approximately one (1) year after them "and the prejudicial spillover at trial would be insurmountable."

No defendant has challenged my finding in the previous April 7, 2010 order that A. Rivera, J. Rivera and Whaley are properly joined for trial pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure because the charges against them in the indictment contain overlapping participants and facts, i.e., all defendants are charged with the same conspiracies and substantive offenses. See, e.g. United States v. Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (finding that joinder was proper where the indictment alleged that the conspiracies shared a common plan or scheme and a substantial identity of facts or participants); United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (finding joinder proper where the conspiracies occurred during the same time period and shared participants and a common plan). For the same reason, Villaman is also properly joined in the superceding indictment under Rule 8(b).

There is a "preference in the federal system for joint trials of defendants who are indicted together." In re Terrorist Bombings of United States Embassies in East Africa, 552 F.3d 93, 131 (2d Cir. 2008) (quoting Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)); United States v. Yousef, 327 F.3d 56, 149 (2d Cir. 2003). Joint trials "promote efficiency" and "serve the interests of justice" by, *inter alia*, avoiding inconsistent verdicts, not requiring the same witnesses to testify repeatedly, preserving judicial resources and avoiding delays. Zafiro, 506 U.S. at 537, 113 S.Ct. 933; see also Bruton v. United States, 391 U.S. 123, 134 (1968) (holding that joint trials conserve state funds, diminish inconvenience to witnesses and public authorities and avoid delays in bringing those accused of crimes to trial); Feyrer, 333 F.3d at 114 (holding that for reasons of economy, convenience and avoidance of delay, there is a

11

preference for joint trials).

Nonetheless, Rule 14(a) provides, in relevant part, that "[i]f the joinder of * * * defendants in an indictment * * * appears to prejudice a defendant or the government, the court *may* * * * sever the defendants' trials, or provide any other relief that justice requires." (Emphasis added). "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-539; see also Yousef, 327 F.3d at 149-150. A defendant has a "difficult burden" of establishing "substantial prejudice" resulting from a district court's denial of a motion for severance. United States v. Sotomayer, 592 F.2d 1219, 1227-1228 (2d Cir. 1979); see also United States v. Persaud, 2011 WL 677406, at * 1 (2d Cir. Feb. 28, 2011) (holding that a district court's denial of a Rule 14 motion for severance will be reversed "only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion."); United States v. Amato, 540 F.3d 153, 164 (2d Cir. 2008) (holding that a district court will only be found to have abused its discretion in denying severance upon a showing of such prejudice as to constitute a miscarriage of justice). When defendants have been properly joined under Rule 8(b), severance under Rule 14 should only be granted if: "there is a serious risk that a joint trial would [1] compromise a specific trial right of one of the defendants, or [2] prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539, 113 S.Ct. 933; see also United States v. Nieves, 354 Fed. Appx. 547, 552 (2d Cir. Dec. 1, 2009), cert. denied sub nom Russell v. United States, 130 S.Ct. 1308, 175 L.Ed.2d 1106 (2010).

No defendant has identified a specific trial right that would be compromised by, or

established any substantial prejudice resulting from, a joint trial. Insofar as defendants Whaley and Villaman claim that a joint trial will result in prejudice from "spillover" that may occur during the trial, those defendants may request any appropriate limiting instruction, or other remedial measure, at trial. Moreover, insofar as Whaley challenges the sufficiency of the evidence against him, that contention is premature and more appropriately addressed after the government has presented all of its evidence at trial. Accordingly, the branches of defendants' respective motions seeking severance of the trial are denied.

III. DISCLOSURE ISSUES

Whaley seeks disclosure of the names, addresses and statements of the "Jane Does Nos. 1-5" named in the original indictment. The government contends that it complied with its Brady obligations on April 30, 2010 by providing to defendants thirteen (13) documents prepared by law enforcement agents identifying the names of, and statements made by, various victims and potential witnesses. Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the government declines to reveal the names and other identifying information of any additional victims or witnesses at this time, but agrees to provide a complete witness list and to disclose the identities of all of the "Jane Doe" witnesses prior to trial.

The government is only required to disclose Brady materials "in time for its effective use at trial," and not upon request. United States v. Douglas, 525 F.3d 225, 245 (2d Cir. 2008) (quoting In re United States (Coppa), 267 F.3d 132, 145 (2d Cir. 2001)). Moreover, the Jencks Act requires disclosure of a witness's statement only *after* a government witness has testified on direct examination. See 18 U.S.C. § 3500(a); see also United State v. Shyne, 617 F.3d 103, 106

13

(2d Cir. 2010); Coppa, 267 F.3d at 145; Fed. R. Crim. P. 16(a) (2) (discovery of witness statements not authorized "except as provided in 18 U.S.C. § 3500."). Accordingly, and based upon the government's representation that it will produce a complete witness list and disclose the identities of all of the "Jane Doe" witnesses in advance of trial, the Court will not compel the production of the requested information and material at this time.

## IV. RESERVATION OF RIGHT TO PRESENT ALIBI DEFENSE

Whaley seeks to reserve his right to present an alibi defense in accordance with the procedures of Rule 12.1 of the Federal Rules of Criminal Procedure. The government defers to the Court's discretion on this issue, but requests that in the event any defendant seeks to offer such a defense, it be provided with advance notice of the details of the alibi defense and a reasonable opportunity to respond to such defense.

Rule 12.1 places the burden on the government to serve a defendant with a written notice identifying the time, date and place of the offense allegedly committed by that defendant and demand that defendant notify it of any intended alibi defense. See Fed. R. Crim. P. 12.1(a). "[A] defendant need not disclose [his] intent to offer an alibi defense unless and until the Government submits a written request" in accordance with Rule 12.1. United States v. Saa, 859 F.2d 1067, 1072 (2d Cir. 1988). Unless and until the government serves any of the defendants with a written notice and demand in accordance with Rule 12.1, defendants may present an alibi defense at trial without providing the government with specific details thereof. In the event that the government serves any defendant with a written notice and demand in accordance with Rule 12.1, that defendant must comply with his or her disclosure obligations in accordance with the

14

procedures and time limits set forth in Rule 12.1 absent a court order otherwise.

V. BILL OF PARTICULARS

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes a court to "direct the government to file a bill of particulars." However, a bill of particulars is not required unless the "charges of an indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004); see also United States v. Ojeda, 2011 WL 782118, at * 1 (2d Cir. Mar. 8, 2011). If a defendant has received sufficient notice of the charges against him through the indictment or other pretrial disclosure, a bill of particulars is not required. See Chen, 378 F.3d at 163. "The ultimate test in determining whether a bill of particulars is appropriate is whether the information is necessary, not whether it is helpful to the defendant." United States v. Wilson, 493 F.Supp.2d 364, 370 (E.D.N.Y. 2006) (internal quotations and citations omitted); see also United States v. Guerrero, 669 F.Supp.2d 417, 426 (S.D.N.Y. 2009). The grant of a request for a bill of particulars is discretionary, see United States v. Ramirez, 609 F.3d 495, 502 (2d Cir. 2010), cert. denied sub nom Rodriguez v. United States, 131 S.Ct. 956, 178 L.Ed.2d 788 (2011); United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998), and requests which "ignore the proper scope and function of a bill of particulars" should be denied. United States v. Volpe, 42 F.Supp.2d 204, 225 (E.D.N.Y. 1999).

Whaley renews his request for a bill of particulars on the basis that "the superceding indictment cries out for clarification." (Letter from Tracey L. Eadie Gaffey, Esq. Dated March 28, 2011, p. 3). However, rather than seeking "clarification" of the charges against him in the

15

superceding indictment, Whaley's request for a bill of particulars seeks evidentiary details and the precise nature of the evidence the government intends to offer at trial, e.g., specific names, conduct and dates and times of that conduct; whether the government intends to prove that Whaley was a principal or aider/abettor in the offense charged; and specifics regarding the force, threats of force, serious harm, threats of serious harm, abuse of legal process, threatened abuse of legal process, fraud, coercion or scheme involved. (Id., attachment). Such demands for particulars with respect to the "wheres, whens and with whoms" of the alleged offense are beyond the scope of a bill of particulars. United States v. Dames, 386 F.Supp.2d 523, 525 (S.D.N.Y. 2005); see also Guerrero, 669 F.Supp.2d at 426; United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001) ("[D]emands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied.") Whaley does not contend, *inter alia*, that he is unaware of the nature of the charges pending against him or unable to sufficiently defend himself against the charges in the superceding indictment, nor that he will be surprised at trial absent "clarification" of the charges against him. Accordingly, Whaley's renewed request for a bill of particulars is denied.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 13, 2011
Central Islip, New York