UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

UNITED STATES OF AMERICA,

Plaintiffs,

-against-

ANTONIO RIVERA, JASMIN RIVERA, JOHN
WHALEY and JASON VILLAMAN,

Defendants.

————————————————————————X

FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★   JUN 1 8 2012   ★

LONG ISLAND OFFICE

**OPINION & ORDER**
09-CR-619 (SJF)

FEUERSTEIN, J.

On May 26, 2011, defendant Antonio Rivera ("Rivera") was convicted, upon a jury verdict,

of one (1) count of conspiracy to commit sex trafficking by means of force, fraud and coercion in

violation of, *inter alia*, 18 U.S.C. §§ 371 and 1591(a), effective October 28, 2000 to December 22,

2008[1] (count one of the superceding indictment); one (1) count of conspiracy to commit sex

trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. §§ 1594(c),

effective December 23, 2008, and 1591(a), as amended by the William Wilberforce Trafficking

Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122 Stat. 5044,

Title II, § 222(b)(5), enacted on December 23, 2008.[2] (count fourteen of the superceding

indictment); four (4) counts of sex trafficking by means of force, fraud and coercion in violation of,

*inter alia*, 18 U.S.C. § 1591(a) (2000) (counts two through five of the superceding indictment); two

-----

[1] The prior statute, effective October 28, 2000 to December 22, 2008, will hereinafter be
referred to as "18 U.S.C. § 1591 (2000)".

[2] The current statute, effective December 23, 2008, will hereinafter be referred to as "18
U.S.C. § 1591 (2009)."

1

(2) counts of sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18

U.S.C. § 1591(a) (2009) (counts fifteen and sixteen of the superceding indictment); one (1) count of

conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589, effective

October 28, 2000 to December 22, 2008[3] (count six of the superceding indictment); one (1) count of

conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 1589(d), as amended by

the TVPRA,[4] effective December 23, 2008, and 1594(b), effective December 23, 2008 (count

seventeen of the superceding indictment); seven (7) counts of forced labor in violation of, *inter alia*,

18 U.S.C. § 1589 (2000) (counts seven through thirteen of the superceding indictment); four (4)

counts of forced labor in violation of, *inter alia*, 18 U.S.C. §1589 (2009) (counts eighteen through

twenty-one of the superceding indictment); one (1) count of conspiracy to transport and harbor

aliens in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (count twenty-two of the superceding

indictment); seven (7) counts of transportation of aliens within the United States in violation of,

*inter alia*, 8 U.S.C. § 1324(a)(1) (counts twenty-three through twenty-nine of the superceding

indictment); and seven (7) counts of alien harboring in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1)

(counts thirty through thirty-six of the superceding indictment).

Defendant John Whaley ("Whaley") was convicted, upon a jury verdict, of one (1) count

of conspiracy to commit sex trafficking by means of force, fraud and coercion in violation of,

*inter alia*, 18 U.S.C. §§ 371 and 1591(a) (2000) (count one of the superceding indictment); one

(1) count of conspiracy to commit sex trafficking in violation of, *inter alia*, 18 U.S.C. §§ 1594(c)

---

[3] The prior version of 18 U.S.C. § 1589, effective October 28, 2000 to December 22, 2008, will hereinafter be referred to as "18 U.S.C. § 1589 (2000)."

[4] The current version of 18 U.S.C. § 1589, effective December 23, 2008, will hereinafter be referred to as "18 U.S.C. § 1589 (2009)."

and 1591(a) (2009) (count fourteen of the superceding indictment); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589 (2000) (count six of the superceding indictment); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 1589(d) and 1594(b) (2009) (count seventeen of the superceding indictment); four (4) counts of forced labor in violation of, *inter alia*, 18 U.S.C. §1589 (2009) (counts eighteen through twenty-one of the superceding indictment); one (1) count of conspiracy to transport and harbor aliens in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (count twenty-two of the superceding indictment); five (5) counts of transportation of aliens within the United States in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (counts twenty-four through twenty-eight of the superceding indictment); and five (5) counts of alien harboring in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (counts thirty-one through thirty-five of the superceding indictment).

Defendant Jason Villaman ("Villaman") was convicted, upon a jury verdict, of one (1) count of conspiracy to commit sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1591(a) (2000) (count one of the superceding indictment); two (2) counts of sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. §§ 1591(a) and (b)(1) (2000) (counts two and three of the superceding indictment); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589 (2000) (count six of the superceding indictment); two (2) counts of forced labor in violation of, *inter alia*, 18 U.S.C. § 1589 (2000) (counts seven and eight of the superceding indictment); one (1) count of conspiracy to transport and harbor aliens in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (count twenty-two of the superceding indictment); four (4) counts of transportation of aliens within the United States in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (counts twenty-three, twenty-four, twenty-seven and twenty-nine of the superceding indictment); and five (5) counts of alien harboring

3

in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1) (counts thirty, thirty-one and thirty-four through thirty-six of the superceding indictment).

Rivera, Whaley and Villaman (collectively, "defendants") have not yet been sentenced upon their respective convictions. Whaley now moves pursuant to Rules 29(c)(2) and 33 of the Federal Rules of Criminal Procedure, respectively, to set aside the jury verdict and (1) enter a judgment of acquittal or (2) for a new trial, and Villaman and Rivera move pursuant to Rule 33 of the Federal Rules of Criminal Procedure to set aside the jury verdict and for a new trial.

I.    DISCUSSION

    A.    Rule 29

        1.    Standard of Review

"Under Rule 29, 'the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 1637, 182 L. Ed. 2d 246 (2012) (citing Fed. R. Crim. Pro. 29(a)); see also United States v. Temple, 447 F.3d 130, 136 (2d Cir. 2006) ("[T]he very nature of . . . motions [for acquittal pursuant to Rule 29] is to question the sufficiency of the evidence to support a conviction." (alterations in original)). Rule 29(c)(2) of the Federal Rules of Criminal Procedure provides, in relevant part, that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."

"The test for sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" Persico, 645 F.3d at 104 (quoting United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003)); see also United States v. O'Connor, 650

F.3d 839, 855 (2d Cir. 2011), cert. denied, 132 U.S. 1040, 181 L. Ed. 2d 791 (2012) ("In

considering * * * a challenge [to the sufficiency of the evidence], [the court] must credit every

reasonable inference that the jury could have drawn in the government's favor, * * * [and] affirm

the conviction so long as, from the inferences reasonably drawn, the jury might fairly have

concluded guilt beyond a reasonable doubt * * *." (citations omitted)).  On a Rule 29 motion

made after a jury has rendered a verdict of guilty, the defendant "carries a heavy burden, and

must show that when viewing the evidence in its totality, in a light most favorable to the

government, and drawing all inferences in favor of the prosecution, no rational trier of fact could

have found him guilty." United States v. Irving, 452 F.3d 110, 117 (2d Cir. 2006); see also

Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (holding that the

test for determining the sufficiency of the evidence is "whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."); United States v. Litwok, 678 F.3d 208, 2012

WL 1478796, at * 3 (2d Cir. 2012) ("A defendant who challenges the sufficiency of the evidence

after a conviction bears a heavy burden * * * ." (citation omitted)); United States v. Abu-Jihaad,

630 F.3d 102, 134-5 (2d Cir. 2010), cert. denied, 131 S. Ct. 3062, 180 L. Ed. 2d 892 (2011) ("A

defendant mounting a sufficiency challenge * * * bears a very heavy burden * * * because a court

must uphold a jury verdict so long as '*any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" (citations omitted)).  "[A] court may enter a

judgment of acquittal only if the evidence that the defendant committed the crime alleged is

nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."

United States v. Heras, 609 F.3d 101, 105 (2d Cir. 2010) (quotations and citation omitted); see

also Temple, 447 F.3d at 136 (accord). "Viewing the evidence in the light most favorable to the government means crediting every inference that the jury might have drawn in favor of the government * * * and recognizing that the government's evidence need not exclude every other possible hypothesis." United States v. Eppolito, 543 F.3d 25, 45 (2d Cir. 2008) (internal quotations and citations omitted); see also United States v. Cote, 544 F.3d 88, 98 (2d Cir. 2008) (holding that on a Rule 29 motion, the evidence must be considered "in its totality, not in isolation, and the government need not negate every possible theory of innocence.").

"In assessing the evidence, a court is constrained to bear in mind that Rule 29 'does not provide [it] with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" Temple, 447 F.3d at 136 (quoting United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (alterations in original)); see also Heras, 609 F.3d at 105 ("Under [Rule 29's] stern standard, a court * * * may not usurp the role of the jury by substituting its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." (citations omitted)); Jackson, 335 F.3d at 180 ("[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal.") "[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence[,]" Jackson, 335 F.3d at 180; see also United States v. Florez, 447 F.3d 145, 154 (2d Cir. 2006) (accord), and, therefore, the court must "defer to the jury's choice" when faced with competing inferences. Persico, 645 F.3d at 104 (quotations and citation omitted); see also United States v. Sabhnani, 539 F. Supp. 2d 617, 624 (E.D.N.Y. 2008), aff'd, 599 F.3d 215 (2d Cir. 2010), cert. denied, 131 S. Ct. 1000, 178 L. Ed.2d 854 (2011) (holding that when faced with conflicting testimony, the court must defer to the jury's

selection between competing inferences). Likewise, "[w]here there are conflicts in the testimony, [the court] must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." Persico, 645 F.3d at 104-05; see also United States v. Josephberg, 562 F.3d 478, 487 (2d Cir. 2009) ("The assessment of witness credibility lies solely within the province of the jury * * *."); United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002) ("[W]hen reviewing the sufficiency of the evidence [courts] defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." (quotations and citations omitted)). Moreover, the court must bear in mind that "[a] jury may convict on circumstantial evidence alone," Irving, 452 F.3d at 117; see also United States v. Celaj, 649 F.3d 162, 167 (2d Cir. 2011), cert. denied, 132 S. Ct. 1636, 182 L. Ed.2d 233 (2012) ("A verdict may be based entirely on circumstantial evidence."); Abu-Jihaad, 630 F.3d at 135 ("[T]he government may secure conviction based solely on circumstantial evidence, provided it is sufficient to prove the elements of the charged crime beyond a reasonable doubt."), and that "the evidence must be viewed in conjunction, not in isolation." Eppolito, 543 F.3d at 45; see also Abu-Jihaad, 630 F.3d at 139 ("[O]n a sufficiency challenge, [courts] review pieces of evidence not in isolation, but in conjunction."); United States v. Cassese, 428 F.3d 92, 98-99 (2d Cir. 2005) (holding that it is "of critical importance [that] the evidence * * * be viewed in its totality * * *, as each fact may gain color from others." (internal quotations and citations omitted)).

"Where a court concludes after a full analysis of the evidence in connection with a Rule 29 motion that 'either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter.'" Temple, 447 F.3d at 137 (quoting United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000)); see also United States v. Espaillet,

380 F.3d 713, 718 (2d Cir. 2004) (accord). "Conversely, 'in passing upon a motion for directed verdict of acquittal, . . . if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted.'" Temple, 447 F.3d at 137 (quoting United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972)); see also Irving, 452 F.3d at 117.

### 2. Forced Labor Counts

Whaley contends, *inter alia*, that the evidence is legally insufficient to convict him of four (4) counts of forced labor (counts eighteen through twenty-one of the superceding indictment) because there was no evidence that he had hired any of the victims to work at the bars, withheld their wages, caused them to remain at the bars, threatened them, was present when they were being threatened or knew that they were being forced to work at the bars. (Whaley Motion at 3-4).[5]

The current forced labor statute, 18 U.S.C. § 1589 (2009)[6], under which Whaley was

---

[5] Whaley does not challenge his conviction on the five (5) counts of transportation of aliens and five (5) counts of alien harboring in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (iii) (counts twenty-four through twenty-eight and thirty-one through thirty-five of the superceding indictment), or on the conspiracy to transport and harbor aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v) (count twenty-two of the superceding indictment), on legal insufficiency grounds.

[6] The prior forced labor statute, 18 U.S.C. § 1589 (2000), provided, in relevant part:

"Whoever knowingly provides or obtains the labor or services of a person--(1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process, shall be fined under this

8

convicted, provides, in relevant part:

> "(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).
>
> (b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).
>
> (c) In this section: (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. (2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. * * *"

The threat of being forced to leave the United States can constitute serious harm to an immigrant within the meaning of the forced labor statute. See, e.g. United States v. Dann, 652 F.3d 1160, 1172 (9th Cir. 2011); Nunag-Tanedo v. East Baton Rouge Parish School Board, 790 F.Supp.2d 1134, 1146 (C.D. Cal. 2011) (holding that the threat of deportation for violating immigration laws constitutes "abuse of legal process" within the meaning of Section 1589 since the objective is to intimidate or coerce the victim into forced labor).

---

title or imprisoned not more than 20 years, or both."

"'[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences of a defendant's knowledge and his criminal intent." United States v. Sabhnani, 599 F.3d 215, 241-2 (2d Cir. 2010), cert. denied, 131 S. Ct. 1000, 178 L. Ed. 2d 854 (2011) (quoting United States v. Huezo, 546 F.3d 174, 182 (2d Cir. 2008)); see also United States v. Thompson, 261 F.2d 809, 812 (2d Cir. 1958) ("It is hard to see how the process of fact finding can go on unless the trier may make the deductions which experience teaches are reasonable and justified."); United States v. Hines, 256 F.2d 561, 564 (2d Cir. 1958) ("[T[he jury may make common-sense inferences from the proven facts in both civil and criminal cases."); United States v. Masiello, 235 F.2d 279, 285 (2d Cir. 1956) ("holding that a jury in a criminal prosecution "must * * * be permitted to make such inferences or deductions from the known data as are common sense under the circumstances.") Contrary to Whaley's contention, the government was not required to prove beyond a reasonable doubt that he hired any of the victims or withheld their wages in order to find him guilty of forced labor under 18 U.S.C. § 1589 (2009), as Section 1589(b) expressly provides that a defendant who "knowingly benefits * * * from participation in a venture which has engaged in" forced labor is also guilty of violating the statute. There was ample basis upon which the jury could conclude both that Whaley knowingly benefitted from his participation in the operation of the bars and that he knew of, or recklessly disregarded, the persistent threats of deportation made to the victims working at the bars. Specifically, the evidence at trial established, *inter alia*, that the victims were all present in the United States illegally when they worked at Sonidos de la Frontera ("Sonidos") and La Hija del Mariachi ("Mariachi") (collectively, "the bars"), (Nelci: T. 171-2; Krissyl: T. 282-4; Elsa: T. 393; Keiby: T. 778; Sandra: T. 866; Alma: T. 1019-20, 1070-1; Estella: T. 1112; Cesi: T. 1161;

Jessie: T. 1242; Morena: T. 1432; Leslie: T. 1473-4, 1504; Florfidia: T. 1554; Special Agent William Brust ["Brust"]: T. 1704-6, 1713; Detective Lopez ["Lopez"], T. 1463-5); that all of the defendants knew that the victims were illegal aliens, (Nelci: T. 175, 198-9, 212-3; Krissyl: T. 291, 387; Jasmin: T. 552-3, 553-5, 644, 764; Keiby: T. 790; Sandra: T. 876-7; Alma: T. 1026, 1038-9, 1056; Estella: T. 1123, 1145; Cesi: T. 1177; Jessie: T. 1246; Mejia: T. 1359; Leslie: T. 1476, 1489-90), and called them derogatory names, such as "whores," (Jasmin: T. 766-7; Mejia: T. 1355, 1393), and "wetbacks," (Jasmin: T. 553-54); that from April 2007 until the bars were closed in August 2009, Whaley transported some of the waitresses who worked at the bars, including eight (8) of the victims who testified at the trial, to and from the bars, (Detective Strecker ["Strecker"]: T. 56-8, 72-3; Krissyl: T. 291-2, 375-6, 381, 388; Elsa: T. 396-8, 419-20, 423; Jasmin: T. 509, 677; Sandra: T. 908, 940; Alma: T. 1024; Estella: T. 1117; Cesi: T. 1167, 1189; Manuel Mejia ["Mejia"]: T. 1332-3; Morena: T. 1435, 1449; Florfidia: T. 1558, 1561); that Whaley had all of the waitress's telephone numbers and would call them to work at the bars, (Jasmin: T. 678); that Whaley entered the bars, (Cesi: T. 1210; Mejia: T. 1336; Krissyl: T. 291, 375), had keys to the bars and would often lock the bars at closing time, (Strecker: T. 65-6; Jasmin: T. 510; Sandra: T. 909, 940; Cesi: T. 1192); that the waitresses who worked in the bars were required to dress in sexy, suggestive and/or revealing clothing, (Nelci: T. 206-8; Krissyl: T. 286, 298-9, 323; Jasmin: T. 543-8; Sandra: T. 881; Alma: T. 1030-1; Estella: T. 1120-1; Cesi: T. 1164, 1172, 1177-8, 1203; Jessie: T. 1276; Mejia: T. 1343-4, 1395; Morena: T. 1440-2; Leslie: T. 1484; Florfidia: T. 1564), and to drink alcohol until drunk, (Nelci: T: 202-3, 206, 220-1; Krissyl: T. 295-6; Elsa: T. 415-6; Jasmin: T. 542-3, 680-1; Keiby: T. 787, 846; Sandra: T. 879-80; Alma: T. 1029-30, 1049, 1099; Estella: T. 1119, 1121; Cesi: T. 1166, 1168, 1171-2, 1240;

11

Jessie: T. 1274-5; Mejia: T. 1340-1, 1347, 1395-6; Morena: T. 1434, 1438, 1443, 1447; Leslie: T. 1483-4; Florfidia: T. 1568-70; Lopez, T. 1463-5); that within the public areas and bathrooms of the bars, waitresses could be seen intoxicated, being touched sexually, fondled and/or groped by male customers, stripping, dancing topless, giving lap dances to customers and/or having sex with customers, and that waitresses also had sex with customers in cars outside the bars during their shifts, (Nelci: T. 193-5, 203, 221-2, 226; Krissyl: T. 298, 300, 317, 376; Elsa: T. 402, 412-3, 418-9, 444; Jasmin: T. 520, 560, 562, 637, 655, 685-6, 689; Keiby: T. 798-801; Sandra: T. 882-3, 885; Alma: T. 1042-4, 1052-3; Estella: T. 1126-9, 1131-4, 1139; Cesi: T. 1180-1, 1207; Jessie: T. 1283-4, 1313-4; Mejia: T. 1347-8, 1381-2, 1394-5, 1397; Morena: T. 1444; Leslie: T. 1495-7; Florfidia: T. 1574-7, 1580-1, 1583, 1586-7, 1589-90; Lopez: T. 1463-5); that Whaley would "keep an eye on" the waitresses who tried to quit working at the bars and would let Rivera know where they were so that Rivera could get them back to work at the bars, (Jasmin: T. 645-7), and even went with Rivera to look for a waitress who had not shown up for work on at least one occasion, (Mejia: T. 1353-5); that most of the victims who testified at trial were scared of being deported or hurt, or of not being paid the wages owed them for working at the bars, if they quit and/or called the police, (Nelci: T. 197-9, 207, 211-5; Krissyl: T. 291, 387; Elsa: T. 415; Keilby: T. 790-1, 801-2, 824; Alma: T. 1026, 1038-9, 1056; Estella: T. 1144-5; Cesi: T. 1177, 1189; Jessie: T. 1257, 1262-3, 1269, 1286-7; Leslie: T. 1488-9, 1494-5, 1499-1504; Florfidia: T. 1573-5); and that Whaley was paid for transporting the waitresses to and from the bars, (Elsa: T. 422-3), and also had sexual intercourse with, groped and/or engaged in other sexual acts with the waitresses that worked at the bars with impunity, (Jasmin: T. 564-630, 729-30; Alma: T. 1047-50, 1080-2; Estella: T. 1141-2; Mejia: T. 1354-5; Morena: T. 1449-50; Florfidia: T. 1593-5;

12

Cesi: T. 1190-2, 1227-8). Moreover, Mejia, who drove some waitresses who worked at the bars from New York City to Mariachi from January 2007 until it was closed and worked as a security guard at Mariachi from April 2007 until it was closed, testified that Rivera referred to Whaley as "his right-hand man," (T. 1337), and that if Whaley was in Mariachi when Rivera was not present, he would go into the bar or kitchen and give orders to the waitresses "like a boss." (T. 1337). Furthermore, Jasmin, Rivera's sister who operated Sonidos, (T. 451-2, 648-9), testified that she conspired with Rivera, Villaman and Whaley to commit sex trafficking, (T. 482-7, 506); that the bars' customers paid either her, Rivera, Villaman or Whaley to take a waitress home for sex at the end of their shift, (T. 562); that prospective waitresses auditioned for Rivera, Villaman and Whaley, (T. 563-4); that Whaley's job at the bars was to make sure that the waitresses did not walk out and to take them home after their shift, (T. 510); that Rivera, Villaman and Whaley all told the waitresses at the bars to keep drinking alcohol during their shift, (T. 766), to lie to the police if they came to the bar, (T. 525), that they could not go outside during their shift, (T. 526-7), and that they could not call the police, (T. 530-1, 731), and reminded any waitress who wanted to quit working at the bars that they were in the United States illegally, (T. 554-5); and that Rivera and Whaley were present in Sonidos when waitresses were "totally intoxicated," being beaten, raped and/or groped by customers and sold to customers for sex, (T. 538-39, 637-8). In addition, Special Agent William Brust, of the United States Department of Homeland Security, testified that Whaley had been arrested in the home where he resided, which was owned by Rivera, (T. 1735), and that following his arrest on August 9, 2009, Whaley sent letters to the United States Attorney's Office indicating that he knew of other commercial businesses on Long Island which harbored aliens and engaged in prostitution. (T. 1730-3).

Since the evidence at trial established, *inter alia*, that the victims were all in the United States illegally; that all of the defendants knew that they were illegal immigrants and either made threats of deportation, or knew of or recklessly disregarded threats made of deportation, to the victims; that all of the defendants benefitted from the services provided by the victims at the bars; and that the victims continued to work at the bars because they feared being deported if their status was learned by immigration or other law enforcement officers, and/or of not being paid the wages due them, the branch of Whaley's motion seeking judgment of acquittal on the four (4) forced labor convictions for which he was convicted pursuant to Rule 29 is denied.

3.    Conspiracy Counts (Counts One, Six, Fourteen, Seventeen and Twenty-Two of the Superceding Indictment)

Whaley contends, *inter alia*: (i) that there was no evidence that he was involved in any charged conspiracy prior to 2007, (Whaley Motion at 3); (ii) that there was no testimony establishing separate conspiracies upon which to base the two (2) counts of sex trafficking and two (2) counts of forced labor conspiracies for which he was convicted, i.e., "[t]here is no testimony or evidence from which a rational jury could have deduced the beginning, end, participants and agreed upon objectives of the separately charged conspiracies," (id.); (iii) that there was no evidence that he ever participated in a sex trafficking conspiracy, i.e., "[t]here was no evidence or testimony that [he] was ever present when any waitress was engaging in commercial sex against her will," (id.); and (iv) that with respect to the forced labor conspiracies, there was no testimony "from which a rational jury could have concluded that [he] agreed to force women to work at the bars" because, *inter alia*, "[r]eminding women of their [illegal alien]

14

status if they wanted to quit is not threatening them" and "[m]aking sure they did not walk out of the bar when they were working is not the same as forcing them to work at the bar," (id.).

The general conspiracy statute, 18 U.S.C. § 371, (counts one and six of the superceding indictment) provides, in relevant part, that "[i]f two or more persons conspire * * * to commit any offense against the United States, * * *, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

18 U.S.C. § 1594, effective December 23, 2008 (counts fourteen and seventeen of the superceding indictment), provides, in relevant part:

> "* * *(b) Whoever conspires with another to violate section * * *1589 [the forced labor statute] * * * shall be punished in the same manner as a completed violation of such section.

> (c) Whoever conspires with another to violate section 1591[7] [the sex trafficking

---

[7] The current sex trafficking statute, 18 U.S.C. § 1591(a) (2009), provides, in relevant part:

> "Whoever knowingly--(1) in or affecting interstate or foreign commerce, * * * recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, * * *, shall be punished as provided in subsection (b).

The prior sex trafficking statute, 18 U.S.C. § 1591(a)(2000), provides, in relevant part:

> "(a) Whoever knowingly--(1) in or affecting interstate or foreign commerce, * * * recruits, entices, harbors, transports, provides, or obtains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing that force, fraud, or coercion described in subsection (c)(2) will be used

15

statute] shall be fined under this title, imprisoned for any term of years or for life, or both."

8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count Twenty-Two of the Superceding Indictment)

provides, in relevant part, that "[a]ny person who– * * *engages in any conspiracy to commit any

———————————————

to cause the person to engage in a commercial sex act, * * * shall be punished as provided in subsection (b).

Section 1591(e)(2) of the current sex trafficking statute and Section 1591(c)(2) of the prior sex trafficking statute define "coercion" as follows:

(2) The term "coercion" means--(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.

Section 1591(e)(3) of the current sex trafficking statute and Section 1591(c)(1) of the prior sex trafficking statute define "commercial sex act" to mean "any sex act, on account of which anything of value is given to or received by any person."

Section 1591(e)(5) of the current sex trafficking statute and Section 1591(c)(3) of the prior sex trafficking statute define "venture" to mean any group of two or more individuals associated in fact, whether or not a legal entity."

In addition, the current sex trafficking statute defines the following relevant terms:

(1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(4) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

16

of the * * * acts [prescribed in Section 1324(a)(1)(A)[8]], shall be punished as provided in subparagraph (B)."

"The traditional deference accorded to a jury's verdict 'is especially important when reviewing a conviction for conspiracy. . . because a conspiracy by its very nature is a secretive operation, * * *.'" Jackson, 335 F.3d at 180 (quoting United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992)); see also United States v. Applins, 637 F.3d 59, 76 (2d Cir. 2011) (accord); United States v. Rojas, 617 F.3d 669, 674 (2d Cir. 2010) (accord). "The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged * * *; (2) that the defendant had knowledge of the conspiracy, * * *; and (3) that the defendant intentionally joined the conspiracy, * * *." United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008) (citations omitted); see also United States v. Yepez, 456 Fed. Appx. 52, 55 (2d Cir. Jan. 24, 2012) (summary order). In addition, the general conspiracy statute, 18 U.S.C. § 371, requires the performance of an overt act. A conspiracy does not require proof of an explicit agreement and "may be established by proof of a tacit understanding among the participants." Santos, 541 F.3d at 71; see also United States v. Svoboda, 347 F.3d 471, 477 (2d Cir. 2003) (accord). Moreover, intentional participation in a conspiracy may be proven by evidence "that a concert of action is

---

[8] 8 U.S.C. § 1324(a)(1) provides, in relevant part:

"(A) Any person who– * * *(ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; (iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; * * *, shall be punished as provided in subparagraph (B)."

contemplated and that the defendants conformed to the arrangement." United States v. Paramount Pictures, 334 U.S. 131, 142, 68 S. Ct. 915, 92 l.Ed. 1260 (1948); see also Santos, 541 F.3d at 72 ("In the absence of an explicit agreement to join a conspiracy, [courts] typically look for evidence that the defendant, in addition to knowing the essential nature of the plan, has associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his action to make it succeed." (internal quotations and citations omitted)).

Whaley has not met his heavy burden of establishing the legal insufficiency of the evidence supporting his conspiracy convictions. Viewing the evidence in its totality, and drawing all reasonable inferences in favor of the government, the evidence is sufficient to allow any rational juror to find beyond a reasonable doubt, *inter alia*, both the existence of conspiracies to violate the sex trafficking and forced labor statutes, and to transport and/or harbor aliens, Whaley's intentional participation in those conspiracies, and overt acts performed in furtherance of the conspiracies. Contrary to Whaley's contention, the government was not required to prove beyond a reasonable doubt that he was actually "present when any waitress was engaging in commercial sex against her will," (Whaley Motion at 3), in order to find him guilty of participating in a conspiracy to commit sex trafficking, given the ample evidence that he acquiesced and participated in an arrangement to transport, coerce and entice illegal immigrant women for prostitution. Likewise, the government was not required to prove beyond a reasonable doubt that Whaley actually threatened or forced any of the waitresses to work at the bar, given the ample evidence that he acquiesced and participated in an arrangement that forced the women to work at the bar, as set forth above.

However, the evidence adduced at trial supports only single conspiracies to commit the various substantive offenses, i.e., a single conspiracy to engage in sex trafficking, a single conspiracy to commit forced labor and a single conspiracy to transport and/or harbor aliens. Nonetheless, Whaley and Rivera were convicted of multiple charges of conspiracy to commit set trafficking in violation of 18 U.S.C. §§ 371 (the prior statute) and 1594(c) (the current statute) (counts one and fourteen of the superceding indictment, respectively), and of multiple charges of conspiracy to commit forced labor in violation of 18 U.S.C. §§ 371 (the prior statute) and 1594(b) (the current statute) (counts six and seventeen of the superceding indictment, respectively). Indeed, the government does not contend otherwise. Rather, the government concedes that this case "does not involve multiple conspiracies but rather involves conspiracies that spanned a period of time in which the [relevant] statutes were amended by Congress * * *," (Govt. Opp. at 18), and contends only that the indictment charged the conspiracy offenses separately in order to "provide notice to the defendant[s] of the method by which [they] violated the law [under the controlling statutes] during the relevant time periods." (Govt. Opp., at 18-19).

In my prior order entered April 13, 2011, I, *inter alia*, denied as premature defendants' motions to dismiss certain counts of the indictment as multiplicitous, but granted them leave to renew that branch of their respective motions in the event the jury found defendants guilty of the counts alleged to be multiplicitous. See United States v. Chacko, 169 F.3d 140, 145 (2d Cir. 1999) ("An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."); see also United States v. Zvi, 168 F.3d 49, 57 (2d Cir. 1999) ("An indictment is multiplicitous when it charges a single offense in more than one count.") The Double Jeopardy Clause of the Fifth

Amendment prohibits, *inter alia*, a defendant from being punished more than once for the same offense. See United States v. Josephberg, 459 F.3d 350, 355 (2d Cir. 2006).

Although the jury convicted Whaley and Rivera on multiple counts of conspiracy to commit sex trafficking and conspiracy to commit forced labor, the Court may enter judgment on only one (1) of each multiplicitous counts. See, e.g. Josephberg, 459 F.3d at 355. Accordingly, the branch of Whaley's motion seeking judgment of acquittal on the conspiracy counts against him pursuant to Rule 29 is denied except insofar as it can be construed to seek dismissal of counts one and six of the superceding indictment as multiplicitous; so much of the jury's verdict as found Whaley and Rivera guilty on counts one and six of the superceding indictment is vacated; and counts one and six of the superceding indictment are dismissed as against Whaley and Rivera as multiplicitous.[9] Whaley and Rivera will only be sentenced upon their convictions of conspiracy to commit sex trafficking and conspiracy to commit forced labor under counts fourteen and seventeen, respectively, of the superceding indictment.

## B. Rule 33

### 1. Standard of Review

Rule 33(a) allows a district court, upon the defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." "Generally, a motion for a new trial should not be granted unless the trial court is convinced that the jury has reached a seriously

---

[9] Counts one and six of the superceding indictment are not multiplicitous with respect to Villaman because he was only charged with conspiracy to commit sex trafficking and conspiracy to commit forced labor, respectively, under those counts of the indictment. Unlike Whaley and Rivera, Villaman was not charged with conspiracy under counts fourteen and seventeen of the superceding indictment.

erroneous result or that the verdict is a miscarriage of justice." United States v. Triumph Capital Group, Inc., 544 F.3d 149, 159 (2d Cir. 2008) (internal quotations and citations omitted); see also United States v. Price, 443 Fed. Appx. 576, 582 (2d Cir. Oct. 5, 2011) (summary order). "The ultimate test [on a Rule 33 motion] is whether letting a guilty verdict stand would be a manifest injustice. . . . There must be a real concern that an innocent person may have been convicted." Persico, 645 F.3d at 109 (quotations and citation omitted); see also United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009); United States v. Guang, 511 F.3d 110, 119 (2d Cir. 2007). Rule 33 motions are "not favored," Persico, 645 F.3d at 109; see also United States v. Middlemiss, 217 F.3d 112, 122 (2d Cir. 2000) ("Granting Rule 33 motions is not favored and is done with great caution."), and "[w]hile courts have 'broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29,' they 'nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances.'" Triumph Capital Group, Inc., 544 F.3d at 159 (quoting United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotations and citation omitted)); see also McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (holding that Rule 33 motions are granted only in extraordinary circumstances and are committed to the trial court's discretion); United States v. Barlow, — Fed. Appx. —, 2012 WL 1548114, at * 1 (2d Cir. May 3, 2012) (summary order). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33 * * *." McCourty, 562 F.3d at 475.

"Though a district court is entitled to weigh the evidence and in doing so evaluate for itself the credibility of the witnesses, * * * it must * * * not wholly usurp[] the role of the jury." Triumph Capital Group, 544 F.3d at 159 (quotations, alterations and citations omitted); see also United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005). "Because the courts generally must

defer to the jury's resolution of conflicting evidence and assessment of witness credibility, it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." McCourty, 562 F.3d at 475-76 (internal alterations, quotations and citation omitted); see also United States v. Thompson, 528 F.3d 110, 120 (2d Cir. 2008) (accord). "An example of exceptional circumstances is where testimony is patently incredible or defies physical realities, and the district court's identification of problematic testimony does not automatically meet this standard." McCourty, 562 F.3d at 475-6 (internal quotations and citation omitted); see also Cote, 544 F.3d at 101; Ferguson, 246 F.3d at 134.

When a Rule 33 motion focuses upon the perjury of a witness, "a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury." United States v. Stewart, 433 F.3d 273, 297 (2d Cir. 2006) (quoting United States v. White, 972 F.2d 16, 20 (2d Cir. 1992)); see also United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001). Nonetheless, "[p]erjury in and of itself is insufficient to justify relief under Rule 33." Stewart, 433 F.3d at 297; see also Monteleone, 257 F.3d at 219 ("Once th[e] threshold demonstration of perjury has been met * * * a new trial is not foreordained."); White, 972 F.2d at 22 ("[T]he mere fact that [a witness] lied on the witness stand does not automatically entitle [the defendant] to a new trial.") "Rather, when a trial has been tainted by false testimony, [the] Court is called upon to strike a fair balance between the need for both integrity and finality in criminal prosecutions by determining whether false testimony was prejudicial in the sense that it affected the outcome of the trial." Stewart, 433 F.3d at 297 (internal quotations and citation omitted). "To do so, [the court] [must] assess the materiality of the perjury to the verdict and [be] guided by [the following] two standards[:] * * * If the prosecution knew or should have known of the perjury

22

prior to the conclusion of the trial, the conviction must be set aside where there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury[,] * * * [but] if the prosecution was not aware of the perjury, a defendant can obtain a new trial only where the false testimony leads to a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." Id. (internal quotations and citations omitted); see also Monteleone, 257 F.3d at 219; United States v. Diaz, 176 F.3d 52, 106 (2d Cir. 1999); White, 972 F.2d at 21. In other words, "[t]he knowing introduction of false testimony will lead to virtually automatic reversal," Stewart, 433 F.3d at 297 (internal quotations and citation omitted); see also Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009) (accord), whereas "newly discovered" perjury will not justify a new trial unless the court finds "that the jury probably would have acquitted in the absence of the false testimony." McCourty, 562 F.3d at 476 (quotations and citation omitted); see also United States v. Torres, 128 F.3d 38, 49 (2d Cir. 1997).

To prevail on a Rule 33 motion based upon newly discovered evidence of perjury, the defendant must show that the evidence: (1) could not, with due diligence, have been discovered before or during the trial; (2) demonstrates that the witness in fact committed perjury; (3) is material, keeping in mind that "[t]he credibility of a witness who testifies as to substantive facts is critical in the trial of a case;" and (4) is not cumulative, i.e., is not "simply additional evidence to that which was presented at trial as to a fact [as opposed to] unique evidence that tends to prove a fact at issue." White, 972 F.2d at 20-2; see also Canova, 412 F.3d at 349; Middlemiss, 217 F.3d at 122; Diaz, 176 F.3d at 106.

23

## 2. Whaley's Motion

Whaley contends that he should be granted a new trial in the interest of justice based upon the government's failure to correct the perjury of its main witness, Jasmin Rivera ("Jasmin"), which denied him due process and a fair trial. (Whaley Motion at 5). According to Whaley, "[w]hen evaluated by an objective standard, Jasmin Rivera's testimony demonstrated that she intentionally lied to the jury on multiple occasions," but the government only corrected her testimony on one (1) occasion. (Id.) Moreover, Whaley contends that Jasmin's "uncorrected perjury was unquestionably material to the verdicts of conviction * * * [because] there was no [other] evidence that [he] knew what was going on in the bars regarding the women, sex and money." (Whaley Motion at 6).

Whaley has not demonstrated extraordinary circumstances justifying a new trial. Notwithstanding some inconsistencies in Jasmin's testimony or between Jasmin's testimony and the victims' testimony, her testimony was neither "patently incredible" nor did it "def[y] physical realities," McCourty, 562 F.3d at 476, and the record does not demonstrate any facts from which it may be inferred that the government knew or should have known that her testimony was false or that she in fact committed perjury. Rather, Whaley raises only credibility issues which were fully explored by the defense on cross-examination, the resolution of which properly falls within the province of the jury. See, e.g. McCourty, 562 F.3d at 476 (finding that the district court did not abuse its discretion in denying the defendant's Rule 33 motion based upon the "problems" with the police testimony at trial because, "[i]t is the function of the jury to weigh the evidence and to assess the credibility of those witnesses who testify * * * [and] to resolve any discrepancies in the testimony * * * that [the defendant] now claims was perjured."); Canova,

24

412 F.3d at 349 (finding that the district court did not abuse its discretion in denying the defendant a new trial because, *inter alia*, the defendant's argument that the witnesses were not credible because their accounts were riddled with inconsistencies and they had motives to testify falsely were fully presented to the jury through cross-examinations and arguments of counsel but were rejected by the jury which had the opportunity to see the witnesses testify, to weigh their testimony against other evidence in the case and to hear counsel's arguments); United States v. Nash, 338 Fed. Appx. 96, 99-100 (2d Cir. July 29, 2009) (summary order) (finding that the defendant's unsupported conclusory allegations of perjury did not warrant a new trial because, *inter alia*, the challenge involved "a credibility assessment which is strictly within the province of the jury.") The jury's determination of Jasmin's credibility is entitled to deference and will not be disturbed by this Court. Since, *inter alia*, the evidence is insufficient to raise a real concern that an innocent person may have been convicted, the branch of Whaley's motion seeking a new trial pursuant to Rule 33 is denied.

3.    Villaman's and Rivera's Motions

a.    Sex Trafficking and Conspiracy Convictions

Villaman contends, *inter alia*: (i) that his conviction based upon a violation of 18 U.S.C. § 1591, which he alleges "became effective in 2008," (Villaman Motion at ¶ 1), violates his due process rights because he left his job at the bar in 2007, prior to the effective date of that statute, and the jury was not instructed as to the effective date of that statute and "on the necessity of finding that [his] conduct extended beyond 2007," (Villaman Motion at ¶ 1); and (ii) that one of the witnesses who testified as to the conspiracy "described events which had no connection to

sex trafficking or forced labor" and another witness never testified that "she saw any money being given in return for sex, thus there was no proof of a 'commercial' sex act, which was part of the 'venture'," (id. at 5).

Contrary to Villaman's contention, the effective date of the sex trafficking statute under which he was convicted, 18 U.S.C. § 1591 (2000), was October 28, 2000, not December 23, 2008. It was only the amendments by the TVPRA which became effective on December 23, 2008. However, Villaman was only convicted of two (2) counts of sex trafficking by means of force, fraud and coercion in violation of 18 U.S.C. § 1591(a) (2000), prior to its amendment by the TVPRA (counts two and three of the superceding indictment). Since the statute under which Villaman was convicted was in full force and effect at the inception of the acts alleged in those counts of the indictment, i.e., in 2005, there was no need to instruct the jury as to the effective date of the statute. Moreover, the jury was properly instructed regarding the amendments by the TVPRA and their effective dates. (T. 2114).

To the extent Villaman challenges his conviction of conspiracy to commit sex trafficking, he was only convicted of one (1) count of conspiracy to commit sex trafficking in violation of 18 U.S.C. § 371 (count one of the superceding indictment), the general conspiracy statute which preceded the enactment of 18 U.S.C. § 1594 on December 23, 2008 and was in full force and effect at the inception of the acts charged in that count of the indictment. Villaman was never charged with a violation of 18 U.S.C. § 1594.

Moreover, to the extent Villaman challenges his conviction under count one of the indictment because it charges conduct occurring between 2005 and December 22, 2008, but he left the bar in 2007, it is well-settled that a defendant need not be a member of a conspiracy from

its inception to its termination, United States v. Dardi, 330 F.2d 316, 329 (2d Cir. 1964); see also

Santos, 541 F.3d at 73, and the evidence was legally sufficient to establish Villaman's

participation in the conspiracy to commit sex trafficking from its inception in 2005 until he left

the bar's employ in 2007. As with Whaley, viewing the evidence in its totality, and drawing all

reasonable inferences in favor of the government, the evidence is sufficient to allow any rational

juror to find beyond a reasonable doubt, *inter alia*, both the existence of conspiracies to violate

the sex trafficking and forced labor statutes, and to transport and/or harbor aliens, and Villaman's

participation in those conspiracies. Although Villaman may not have participated in all aspects

of the conspiracy, it is enough that he acquiesced and participated in arrangements to transport,

coerce and entice illegal immigrant women for prostitution and to force the women to work at the

bar, in support of which there was ample evidence adduced at trial. See, e.g. Santos, 541 F.3d at

73 ("The defendant's participation in a single transaction can, on an appropriate record, suffice to

sustain a charge of knowing participation in an existing conspiracy. * * * The defendant need not

know * * * all of the details of the conspiracy." (internal quotations and citations omitted)).

Whether or not Villaman played a central role in the charged conspiracies, "he is liable as a co-

conspirator if the jury found-as it apparently did and reasonably could have here-that he knew of

[their] existence . . . and knowingly joined and participated in [them]." Id. at 73-74.

In sum, contrary to Villaman's contention, the jury was not required to find that his

conduct "extended beyond 2007," (Villaman Motion at ¶ 1), in order to convict him of either sex

trafficking in violation of 18 U.S.C. § 1591(a)(1) (2000) or conspiracy to commit sex trafficking

in violation of 18 U.S.C. § 371, and the evidence was legally sufficient to find him guilty of

those charges beyond a reasonable doubt. Accordingly, the branches of Villaman's motion

seeking a new trial on the basis that since he left the bar in 2007, he could not be convicted of sex

trafficking under 18 U.S.C. § 1591, or a conspiracy to commit that offense, and that the evidence

was legally insufficient to establish his guilt of conspiracy to commit sex trafficking and

conspiracy to commit forced labor, are denied.


       b.      Interstate Commerce Connection

Villaman and Rivera contend that the verdicts finding them guilty of sex trafficking were

not supported by substantial evidence because the government did not "satisf[y] the interstate or

foreign commerce connection with any person in this case" since all of defendants' alleged

conduct occurred within the State of New York.  (Villaman Motion at ¶ 2; Rivera Motion at ¶ 1)

(emphasis omitted).

Initially, Villaman and River do not challenge the sex trafficking statute as

unconstitutional and, indeed, sex trafficking has been found to have a substantial effect on

interstate commerce such that it is within the power of Congress to regulate.  See United States v.

Todd, 627 F.3d 329, 333 (9th Cir. 2010) (finding that in enacting the TVPRA, "Congress

concluded that prostitution in American cities encouraged and enlarged the market for this traffic

from abroad" and that "[s]ex traffic is a global matter," and holding that the TVPRA "deals with

commerce within the power of Congress to regulate."); United States v. Evans, 476 F.3d 1176,

1178-9 (11th Cir. 2007) (finding that in enacting the TVPRA, "Congress found that trafficking of

persons has an aggregate economic impact on interstate and foreign commerce * * *.")  Where,

as here, "the type of activity at issue has been found by Congress to have a substantial connection

with interstate commerce, the government need only prove that the individual subject transaction

has a *de minimis* effect on interstate commerce." United States v. Miller, 116 F.3d 641, 674 (2d

Cir. 1997); see also United States v. LaBarbara, 129 F.3d 81, 87-8 (2d Cir. 1997) (holding that

for crimes containing an "affecting commerce" element, the "[i]ndividual crimes need involve

only a *de minimis* effect on interstate commerce.")

Although the Second Circuit has not expressly interpreted the "in or affecting interstate

commerce" element of the sex trafficking statute under which Villaman and Rivera were

convicted, it has consistently interpreted statutes dealing with commerce within the power of

Congress to regulate and requiring a similar element, i.e., an "affect on interstate commerce," as

requiring only a *de minimis* effect on interstate commerce. See, e.g. Celaj, 649 F.3d at 168

(holding that in a prosecution under the Hobbs Act, 18 U.S.C. § 1951(a), "the burden of proving

a nexus to interstate commerce is minimal."); United States v. Gomez, 580 F.3d 94, 101 (2d Cir.

2009) (holding that in a prosecution under the Hobbs Act, "only a very slight effect on interstate

commerce need be shown."); United States v. Gotti, 459 F.3d 296, 336 (2d Cir. 2006) (holding

that in a prosecution under the money laundering statute, 18 U.S.C. § 1956, the "affect on

interstate commerce" element requires only "a *de minimis* effect on interstate commerce.");

United States v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002) (holding that in a prosecution under 18

U.S.C. § 922(g) [unlawful possession of a firearm by a felon], the "in or affecting interstate

commerce" element requires only a minimal nexus with interstate commerce); United States v.

Feliciano, 223 F.3d 102, 118-19 (2d Cir. 2000) (affirming a jury instruction in a prosecution

under the Violent Crimes in Aid of Racketeering Activity Act, 18 U.S.C. § 1959, that the effect

on interstate commerce element required only minimal proof). "[E]ven a potential or subtle

effect on commerce will suffice." Gomez, 580 F.3d at 101; see also Celaj, 649 F.3d at 168

("[A]ny interference with or effect upon interstate commerce, whether slight, subtle, or even potential, [] is sufficient * * *."); United States v. Parkes, 497 F.3d 220, 230 (2d Cir, 2007).

At trial, the government introduced evidence, *inter alia*, that cellular telephones and/or e-mail was used in connection with defendants' business at the bars, that beer manufactured out of state that had traveled in interstate commerce was sold at the bars, that the services provided in the bars was advertised over the internet and that, on at least two (2) occasions, intoxicated waitresses who had been working at the bars had been transported to a hotel that served interstate travelers where they had been sexually assaulted. (T. 168, 395, 489, 497-8, 513-4, 1410-20, 1550-1, 1603-6, 1765). Such evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that defendants' sex trafficking activities had an effect on interstate commerce. See, e.g. United States v. Paris, No. 03:06-C-64, 2007 WL 3124724, at * 8 (D. Conn. Oct. 24, 2007) (finding that the defendant's use of cellular telephones in connection with his business, acceptance of credit cards as payment, operation of his business out of hotels frequented by out-of-state guests and provision of condoms that were manufactured out of state was sufficient to establish a substantial effect on interstate commerce because, *inter alia*, procuring women to engage in commercial sex acts contributes to an interstate market in commercial sex, even when the procuring occurred intrastate); Todd, 627 F.3d at 333 (finding that the defendants' activities affected interstate commerce since the crime had been conducted by advertising across state lines); Evans, 476 F.3d at 1178-9 (finding that the defendant's use of hotels that served interstate travelers and distribution of condoms that traveled in interstate commerce were evidence of an effect on interstate commerce). Accordingly, the branches of Villaman's and Rivera's motions seeking a new trial on their sex trafficking convictions is denied.

c.    Errors in Jury Charge and Verdict Sheet

Villaman and Rivera contend that the jury may have been confused by inconsistent citations in the written jury charge provided to them and on the verdict sheet, i.e., to 18 U.S.C. § 1324 instead of 8 U.S.C. § 1324, (Villaman Motion at ¶¶ 3 and 4; Rivera Motion at ¶¶ 2-3); and that the jury was mistakenly charged as to the definition of "harboring" twice but was never charged as to the definition of "transporting" within the meaning of 8 U.S.C. § 1324, (Villaman Motion at ¶ 4; Rivera Motion at ¶ 3).

Rule 30(d) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] party who objects to any portion of the [jury] instructions * * * must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. * * * Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)." Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Rule 52(b) provides courts with "a *limited* power to correct errors that were forfeited because they were not timely raised." United States v. Zangari, 677 F.3d 86 (2d Cir. 2012) (quotations, alterations and citations omitted).

Since defendants did not object to the alleged errors in the jury instructions prior to the jury retiring, i.e., to the occasional references to 18 U.S.C. § 1324(a)(1) instead of to 8 U.S.C. § 1324(a)(1) and the failure to provide the correct statutory definition of "transporting," they must establish that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [their] substantial rights, which in the ordinary case means it affected the outcome of the [trial]; and (4) the error seriously affects the fairness,

31

integrity, or public reputation of judicial proceedings." <u>United States v. Marcus</u>, 130 S. Ct. 2159, 2164-6, 176 L. Ed.2d 1012 (2010).[10] For purposes of this motion, the first two (2) factors are not in dispute. For a forfeited error to affect a defendant's substantial rights, "it must be prejudicial, which means that there must be a reasonable probability that the error affected the outcome of the trial." <u>United States v. Cain</u>, 671 F.3d 271, 287 (2d Cir. 2012), <u>cert.</u> denied <u>sub</u> <u>nom</u> <u>Soha v. United States</u>, 132 S. Ct. 1872 (Apr. 2, 2012) (quoting <u>Marcus</u>, 130 S. Ct. at 2164). "The burden of establishing entitlement to relief for plain error is on the defendant claiming it." <u>United States v. Wagner-Dano</u>, 679 F.3d 83, 2012 WL 1660956, at * 9 (2d Cir. May 14, 2012); <u>see</u> <u>also</u> <u>Zangari</u>, 677 F.3d 86.

Defendants have not satisfied their burden of showing plain error resulting from any minor errors in the jury instructions and verdict sheet. Indeed, defendants do not even allege a reasonable probability that those errors affected the outcome of the trial. Rather, they allege only that the error in occasionally referencing Title 18 instead of Title 8 "may well have" caused juror confusion and led to an incorrect verdict. (Villaman Motion at ¶ 3; Rivera Motion at ¶ 2). The lack of any confusion caused by the typographical errors is evident from the fact that counsel themselves were unaware of any error until the instant motion, as well as from the fact that the only typographical error observed by the jury was the incorrect heading of "Harboring--Fourth Element" on page fifty (50) of the written jury instructions provided to them, instead of "Transporting--Fourth Element." (Court Exhibits 15 and 23; T. 2203-5). Notwithstanding the

---

[10] Although the plain error standard is not applicable to structural errors, i.e., "a very limited class of errors that affect the framework within which the trial proceeds," <u>Marcus</u>, 130 S.Ct. at 2164-65 (internal quotations and citations omitted), an instructional error, such as the one alleged here, does not constitute a structural error. <u>See</u>, <u>e.g.</u> <u>id.</u> at 2165.

incorrect heading, the substance of the charge instructed the jury as to the elements of transportation not harboring. (Court Exhibits 15 and 23, T. 2135-40). Once the jury brought that error to the attention of the Court, the jury was instructed, upon the consent of all parties, that there was a typographical error and that the heading on page fifty (50) of the instructions should be "Transportation-Fourth Element," and was referred to page fifty-two (52) of the written instructions for an explanation of the wilfulness element of both harboring and transportation. (T. 2203-05, 2219). Accordingly, defendants have not demonstrated any probability, much less a reasonable probability, that the typographical errors misled the jury or failed to adequately inform them on the law. See United States v. Bell, 584 F.3d 478, 484 (2d Cir. 2009).

Moreover, jury "instructions must be evaluated not in isolation but in the context of the entire charge." Jones v. United States, 527 U.S. 373, 391, 119 S. Ct. 2090, 144 L.Ed.2d 370 (1999); see also Waddington v. Sarausad, 555 U.S. 179, 191, 129 S. Ct. 823, 172 L. Ed. 2d 532 (2009). During the jury charge, I referenced the correct title, Title 8, on several occasions, (T. 2134, 2140), and adequately instructed the jurors on the law, (T. 2058-2114, 2120-2157), including the law pertaining to the alien transportation and harboring charges, (T. 2133-2145). Indeed, no defendant challenges the adequacy of my jury instructions on the substantive law. Thus, there is no reasonable probability that the minor errors in the jury instructions and verdict sheet, which were either unnoticed by counsel until the instant motions or were corrected upon consent by all counsel, misled the jurors or otherwise had any effect upon their verdict. Accordingly, the branches of Villaman's and Rivera's motions seeking a new trial on the basis of errors in the jury charge and verdict sheet is denied.

### d. Credibility of Witnesses

Villaman and Rivera contend that all of the witnesses who testified had motives to lie and gave inconsistent testimony, that the government's entire case was based upon inherently unreliable eyewitness testimony and that the government never established why the witnesses would be afraid of deportation, (Villaman Motion at ¶¶ 6-7; Rivera Motion at ¶¶ 4-5).

Like Whaley, Villaman and Rivera have not demonstrated that the testimony of any of the witnesses was "patently incredible" or "defie[d] physical realities," nor any other exceptional circumstance to justify "intrud[ing] upon the jury function of credibility assessment." McCourty, 562 F.3d at 475-76. Although the witnesses may have testified differently with respect to certain details concerning the offenses, none of the testimony was incredible as a matter of law and their testimony regarding the atmosphere in the bar and the nature of the offenses committed by defendants was consistent. The differences in the testimony merely "presented a question of credibility for the jury." Cote, 544 F.3d at 102. Since, *inter alia*, the evidence is insufficient to raise a real concern that an innocent person or persons may have been convicted, the remaining branches of Villaman's and Rivera's motions for a new trial pursuant to Rule 33 are denied.


## II. CONCLUSION

For the reasons set forth above: (a) the branch of Whaley's motion seeking to set aside the jury verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure is granted to the extent that the jury's verdict finding Whaley and Rivera guilty on counts one (1) and six (6) of the superceding indictment is vacated and those counts of the superceding indictment are dismissed as against Whaley and Rivera as multiplicitous, and Whaley's motion is otherwise

denied in its entirety; and (b) the motions of Rivera and Villaman seeking to set aside the jury verdict and for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure are denied in their entirety. Rivera's and Villaman's sentencing scheduled for July 18, 2012 at 11:15 a.m., and Whaley's sentencing scheduled for October 16, 2012, shall proceed accordingly.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated:    June 18, 2012
          Central Islip, New York