UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

JOHN WHALEY,

              Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
09-CR-619-JMA-3

**FILED**
**CLERK**
4:38 pm, Nov 09, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Breon Peace
    United States Attorney
Anthony Bagnuola
     Assistant United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
    *Attorneys for the United States*

Maureen S. Hoerger
Perini & Hoerger
1770 Motor Parkway, Suite 300
Hauppague, NY 11749
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

    Following a jury trial, defendant John Whaley ("Defendant") was convicted for his role in a scheme described by the Second Circuit as follows:

> Rivera owned and operated two bars on Long Island, and recruited undocumented immigrants to work there, ostensibly as waitresses. Villaman worked as a security guard at one of the bars, and Whaley assisted Rivera in the bars' operation. Both of them drove waitresses to and from work.
>
> Waitresses at Rivera's bars were forced to engage in sexual acts with customers. To ensure that they did so, the defendants physically assaulted waitresses, withheld their pay, and threatened them with deportation. Several were raped or otherwise sexually assaulted by the defendants.

> After jury trials, Rivera and Villaman were convicted on substantive counts of sex trafficking, forced labor, harboring illegal aliens, and transporting illegal aliens, as well as conspiracies to commit those offenses. Whaley was convicted of conspiracies to commit sex trafficking, forced labor, harboring illegal aliens, and transporting illegal aliens, as well as substantive counts of forced labor, harboring illegal aliens, and transporting illegal aliens.

United States v. Rivera, 758 F. App'x 148, 150 (2d Cir. 2018). Following Defendant's conviction, the late Hon. Sandra J. Feuerstein sentenced Defendant to twenty-five years of incarceration, and after an appeal and remand, resentenced him to that same sentence. Id. Defendant appealed the sentence and the Second Circuit affirmed the sentence as substantively and procedurally reasonable. Id. He is projected to be released from custody on November 28, 2030. (ECF No. 576 at 2 n.2.)

Defendant now moves for compassionate release based on his vulnerability to COVID-19 while incarcerated. After Defendant filed his moving brief pro se, (ECF No. 574), Judge Feuerstein then appointed counsel to represent Defendant in connection with the motion, (ECF No. 575). The government opposes Defendant's motion, (ECF Nos. 576, 589), and Defendant's counsel has filed several additional filings regarding his pending application, (ECF Nos. 587, 588, 590, 591.) Following Judge Feuerstein's untimely passing, this case was reassigned to the undersigned. For the reasons set forth below, the Court **DENIES** Defendant's motion.

## I.        APPLICABLE LAW

Following the exhaustion of all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility—whichever is earlier—a defendant may file a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). The statute provides that after considering the factors set forth in 18 U.S.C. § 3553(a), the Court may reduce a sentence if extraordinary and compelling reasons justify such action. 18 U.S.C. § 3582(c)(1)(A).

"[D]istrict courts [may] consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also id. at 236 ("Because Guideline § 1B1.13 is not applicable to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." (internal quotation marks omitted)). However, "[e]ven if extraordinary and compelling reasons exist," the district court "may deny" compassionate release "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. O'Neil, No. 17-CR-444, 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021) (quoting United States v. Davies, No. 17-CR-57, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020)).

## II.     DISCUSSION

The government does not dispute that Defendant has exhausted his administrative rights. However, Defendant has failed to demonstrate extraordinary and compelling reasons that warrant compassionate release.

Defendant bears "the burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." United States v. Gotti, No. 02-CR-743-07, 2020 WL 497987, at *5 (S.D.N.Y. Jan. 15, 2020). In his initial motion, Defendant argues that he is at an increased risk of contracting COVID-19 and developing severe illness should he contract COVID-19 because he suffers from high blood pressure, which he controls with medication. (ECF No. 574.) In a subsequent application filed by counsel, Defendant alleges that he tested positive for COVID-19 on June 18, 2020 and had no symptoms. (ECF No. 587 at 7.) Defendant further alleges that in

October 2020, Defendant had an episode of difficulty breathing and was diagnosed with a mild eventration of the diaphragm, which is physical abnormality of the diaphragm. (Id.) Defendant has since had several other episodes of difficulty breathing and chest pain. (Id. at 8.) Defendant argues that a study conducted by Northwestern University states that eventration may be a consequence of COVID-19 in some patients. (Id. at 9.) Defendant also argues that regardless of the cause of eventration, the condition makes him more vulnerable to future medical issues and that if he was reinfected with COVID-19, he would face serious consequences. (Id. at 10.) In a subsequent submission, Defendant's counsel informed the Court that Defendant was diagnosed with a moderate lung obstruction and was advised by a physician's assistant that it could be evidence of asthma or chronic obstructive pulmonary disease ("COPD"). (ECF No. 591.) Defendant's counsel also informed the Court that Defendant has received the Johnson & Johnson COVID-19 vaccine. (ECF No. 590.)

The government argues that Defendant has not met his burden of establishing extraordinary and compelling reasons for his release. The government notes that although Defendant previously refused the vaccine, he has since been vaccinated, and that he has not shown that his medical concerns present extraordinary circumstance justifying release. (ECF Nos. 576, 589.)

Though the Court is sympathetic to Defendant's medical conditions, it is by no means certain Defendant will contract COVID-19 again, particularly in light of: (1) the fact that Defendant has been vaccinated; (2) the protective measures the BOP has taken to curb spread of the disease; and (3) the fact that currently 0 inmates are testing positive for COVID-19 at Otisville FCI.[1] Furthermore, courts have denied compassionate release motions by defendants with similar

---

[1] See Federal Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus (providing daily calculations of confirmed infections) (accessed on November 8, 2021, at 6:11 p m.).

conditions.  See United States v. Gibson, No. 17-CR-06571, 2020 WL 7343802, at *5 (E.D.N.Y. Dec. 14, 2020) (denying compassionate release where defendant suffered from hypertension among other conditions); United States v. Efrosman, No. 06-CR-95, 2020 WL 4504654, at *2 (E.D.N.Y. Aug. 5, 2020) (denying compassionate release where defendant had a "moderate obstruction" in his lungs, although he has not been diagnosed with COPD).

Though the Court has already found Defendant failed to establish an extraordinary and compelling reason to justify a reduction in his sentence, the Court notes also that the Section 3553(a) factors do not weigh in favor of a sentence reduction.[2]  Compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.  A reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct.  It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct.  Defendant argues that his rehabilitation efforts and plans for his release support his application. (Id. at 11.)  While the Court lauds his efforts at rehabilitation while incarcerated, considerations of public safety and the

---

[2]  These factors are:
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed—
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) [the kinds of sentences and sentencing range provided for in the USSG]
  (5) any pertinent [Sentencing Commission policy statement]
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

need for appropriate deterrence continue to indicate that the sentence Judge Feuerstein imposed is warranted. Accordingly, the Section 3553(a) factors weigh against granting Defendant's motion.

Finally, to the extent Defendant argues that the Court can grant him home confinement for the remainder of his sentence, the Court lacks the power to do so. "Although the Second Circuit 'has not determined whether a district court has the power to order a defendant to serve his term of imprisonment in home confinement[,] [o]ther Circuits . . . have held that this power rests solely with the Bureau of Prisons.'" United States v. Spaulding, No. 16-CR-851, 2021 WL 4691140, at *2 (S.D.N.Y. Oct. 6, 2021) (quoting United States v. DiBiase, 857 F. App'x 688, 689–90 (2d Cir. 2021)). This Court will therefore follow the approach of many other district courts in this circuit and will defer to the Bureau of Prisons' determination on this issue. Id. (collecting cases).

### III. CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**.

**SO ORDERED.**

Dated: November 9, 2021
      Central Islip, New York

        /s/ (JMA)
        JOAN M. AZRACK
        UNITED STATES DISTRICT JUDGE