UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-------------------------------------------------------------------X

JOHN WHALEY,

                                   Petitioner,

              -against-

UNITED STATES OF AMERICA,

                                Respondent.

-------------------------------------------------------------------X

**<u>MEMORANDUM & ORDER</u>**  
20-cv-01863 (JMA)  
09-cr-00619 (JMA)

**FILED**  
**CLERK**

4:58 pm, Jun 05, 2024

**U.S. DISTRICT COURT**  
**EASTERN DISTRICT OF NEW YORK**  
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Currently before the Court is a <u>pro</u> <u>se</u> petition filed by John Whaley ("Whaley" or "Petitioner") to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). Whaley also filed a Supplemental Petition, a motion for release on bond while his Petition is pending, and three motions to amend the instant petition. For the reasons set forth below, the motions to amend are GRANTED, and the Petition, Supplemental Petition, and motion for release on bond are DENIED.

The Honorable Sandra J. Feuerstein presided over Whaley's trial, sentencing, and subsequent resentencing. After Judge Feuerstein's passing, this case was transferred to the undersigned.

## I.      BACKGROUND

### A.    <u>Indictment, Conviction, and Sentencing</u>

In September 2009, Whaley was indicted on multiple charges of sex trafficking, forced labor, and transporting and harboring aliens. (Indictment, Docket No. 09-cr-619, ECF No. 25.) Thereafter, on October 5, 2010, Whaley, along with co-defendants, was further charged in a superseding indictment with the same and additional crimes. (Superseding Indictment, ECF. No. 88.) Specifically, the Superseding Indictment "split" the charges related to sex trafficking and

forced labor into two time periods: for the acts committed between July 1, 2005 and December 22, 2008, and for the acts committed between December 23, 2008 and August 10, 2009. (Id.) The latter were charged under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). (Id.) All these charges arose from Whaley's involvement in operations run by co-defendant Antonio Rivera, who owned and oversaw two Long Island bars where undocumented immigrants were recruited as waitresses and then forced to engage in commercial sex acts and other sexual contacts with the establishments' patrons. See United States v. Rivera, 799 F.3d 180, 183 (2d Cir. 2015), cert. denied, 578 U.S. 1015 (2016). Whaley worked at those bars in different capacities and engaged in a variety of unlawful conduct from January 2007 through August 2009. Whaley worked as a driver providing transportation to the waitresses to and from the bars, (see, e.g., Trial Tr. 355:23-25, 375:10-376:7, ECF No. 413), and was known as Rivera's "right-hand man," (id. at 1337). Furthermore, on multiple occasions, Whaley sexually assaulted the waitresses. (See, e.g., id. at 1048:15-1049:5, 1174:8-1199:7.)

In the course of a month-long jury trial, multiple victims and fact witnesses testified about their treatment at Rivera's bars. Whaley was ultimately convicted of:

- two counts of sex trafficking conspiracy (Counts 1 and 14) in violation of 18 U.S.C. §§ 371 and 1594(c), respectively;

- two counts of forced labor conspiracy (Counts 6 and 17) in violation of 18 U.S.C. §§ 371 and 1594(b), respectively;

- four counts of forced labor in violation of 18 U.S.C. § 1589;

- one count of conspiracy to transport and harbor aliens in violation of 18 U.S.C. § 1324; and

- ten counts of transporting and harboring aliens in violation of 18 U.S.C. § 1324.

(ECF No. 233).

2

Whaley's trial counsel Tracey Gaffey, Esq. made various post-trial motions, including pursuant to Federal Rules of Criminal Procedure 29 and 33, seeking to set aside the jury verdict and obtain a new trial.  (ECF No. 242.)  Among other things, Gaffey argued that Whaley's convictions on two counts of sex trafficking and two counts of forced labor conspiracies were multiplicitous and violated the Double Jeopardy Clause.  (ECF No. 242 at 1-5.)  Judge Feuerstein agreed that the counts were multiplicitous and vacated Whaley's convictions on the sex trafficking and forced labor conspiracy counts charged under 18 U.S.C. § 371 (Counts 1 and 6 respectively), but allowed the rest of the convictions to stand, including Counts 14 and 17, the sex trafficking and forced labor conspiracies under TVPRA, 18 U.S.C. §§ 1594(c) and (b).  (June 19, 2012 Order at 19-20, ECF No. 299.)

In November 2011, Whaley filed a Section 2255 petition, challenging his conviction and arguing ineffective assistance of trial counsel.  (See ECF No. 339 at 1-2.)  Judge Feuerstein dismissed the petition without prejudice as premature, and Gaffey asked to be relieved as Petitioner's counsel.  (See ECF No. 263 at 1.)  After Gaffey was relieved from representing him, Whaley moved pro se pursuant to Rule 33, seeking a new trial based on Gaffey's alleged ineffectiveness.[1]  (Rule 33 Motion at 1-2, ECF No. 339.)  Judge Feuerstein denied this motion finding that it was both untimely and meritless.  (Rule 33 Order at 9-12, ECF. No. 382.)  On the merits, Judge Feuerstein found that Whaley's ineffective assistance claims concerning Gaffey failed under both prongs of Strickland v. Washington, 466 U.S. 668, 696-98 (1984).  (Id.)

---

[1] Whaley raised numerous arguments, asserting, among other things, that Gaffey decided, without consulting him, what portions of the verdict to challenge in post-trial motion and that she did not contest the transporting and harboring aliens charges.  (Rule 33 Motion at 3-7.)  Gaffey responded and explained her strategic choices, disputing Whaley's account of the events.  (Gaffey's Affirmation at 1-2, ECF No. 384.)

3

The case then proceeded to sentencing, where Whaley was represented by Marianne S. Rantala, Esq.  (ECF No. 267.)  Whaley, through counsel, objected to the PSR, arguing, among other things, that, under the United States Sentencing Guidelines ("U.S.S.G."), his combined adjusted offense level should have been 26 and not 43, the offense level calculation set out in the PSR.  (ECF No. 381 at 2).  At Whaley's June 12, 2013 sentencing, Judge Feuerstein overruled the objections of defense counsel to, among other things, the application of a two-level sentencing enhancement for "serious bodily injury," U.S.S.G. § 2A3.1(b)(4), and a four-level enhancement for aggravated sexual abuse, U.S.S.G. § 2A3.1(b)(1).  (Sentencing (June 12, 2013) Tr. at 3-6, <u>see</u> Docket No. 13-2864, ECF No. 129 at 218-236.)  Judge Feuerstein ultimately sentenced Whaley to two concurrent terms of 25 years of imprisonment on Counts 14 and 17, the sex trafficking and forced labor conspiracies under the TVPRA.  (ECF No. 400 at 2-3.)  Those sentences ran concurrently with lesser prison sentences that Judge Feuerstein imposed for the remaining convictions.  (<u>Id</u>.)

## B.   <u>First Appeal</u>

Whaley appealed his conviction and sentence.  On appeal, he was represented by Elizabeth Latif, Esq. and Daniel Wenner, Esq.  (Docket No. 13-2864, ECF Nos. 27, 101.)  The Second Circuit affirmed Whaley's conviction, but remanded the case for resentencing.[2]  <u>See</u> <u>Rivera</u>, 799 F. 3d at

---

[2] On appeal, Whaley's counsel filed a brief arguing, among other things, that his substantive forced labor convictions were not supported by sufficient evidence and that the multiplicitous counts in the indictment with respect to sex trafficking and forced labor counts (both substantive and conspiracy) were prejudicial.  (Docket No. 13-2864, ECF No. 125 at 8-33.)  Furthermore, Whaley's counsel joined in the arguments of co-appellant, who, among other things, argued that (1) the jury instructions on the sex trafficking and labor counts were erroneous and (2) evidence was insufficient with respect to the counts as they related to four of the victims.  (ECF Nos. 93, 103).  Whaley also filed a separate <u>pro se</u> brief in which he argued, among other things, that: (1) his conviction under the TVPRA violated the Ex Post Facto Clause, (ECF No. 137-1 at 1-14); (2) his due process rights were violated when the Government leaked information about indictment and his prior criminal history to the media, (<u>id.</u> at 30-35).  In its decision, the Second Circuit addressed three specific arguments brought up by Whaley and his co-appellants and denied their "remaining arguments" in a single sentence, finding them all to be "without merit."  <u>Rivera</u>, 799 F.3d at 189.

4

187-88.  With respect to the convictions, Whaley and his co-appellants argued, <u>inter alia</u>, that the jury charge for the sex trafficking counts was erroneous.  <u>Id.</u> at 186.  The Second Circuit found that these instructions were erroneous but "this error was harmless beyond a reasonable doubt." <u>Id.</u>

With respect to sentencing, the Second Circuit vacated Whaley's sentence because the district court had improperly applied the "serious bodily injury" enhancement, had not adequately explained the imposition of the "aggravated sexual abuse" enhancement, and the 25-year sentence imposed on the forced labor conspiracy exceeded the 20-year statutory maximum.  <u>Id.</u> at 187-88. The Second Circuit ordered a full resentencing and directed the district court to provide further explanation concerning the imposition of any applicable enhancements.  <u>Id.</u>

On November 25, 2013, while his appeal was still pending before the Second Circuit, Whaley, proceeding <u>pro se</u>, moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 410.)  Whaley argued, among other things, that convicting him under the newly enacted TVPRA violated the Ex Post Facto Clause.  (<u>Id.</u> at 37-45.)  He also claimed that the Superseding Indictment was deficient and violated his right to due process as it did not give him sufficient notice of the charges against him.  (<u>Id.</u> at 46-47.)  Judge Feuerstein dismissed the petition as premature and without prejudice to renew, noting that many of the arguments were already raised and were pending before the Second Circuit at that time.  (ECF No. 474.)

**C.    Resentencing and Second Appeal**

After the Second Circuit remanded the case for resentencing, Whaley, represented by a new counsel, Maureen S. Hoerger, Esq., argued that Whaley's new sentence should not exceed 10 years. (Docket No. 09-cr-619, ECF No. 466 at 19; ECF No. 499 at 3.)  At the resentencing on April 7, 2017, Judge Feuerstein denied, over Whaley's objections, his motion to relieve Hoerger as his

counsel. (Resentencing (Apr. 3, 2017) Tr. at 4:10-5:15, see Docket No. 17-1562, ECF No. 76 at 190-216.) Hoerger argued that Whaley did not qualify for the serious bodily injury and aggravated sexual abuse enhancements. (Id. at 6-10.) Judge Feuerstein found, among other things, that the four-level aggravated abuse enhancement still applied. (Id. at 13:20-22, 14:12-14.) While Whaley's advisory Guidelines range was life, Judge Feuerstein ultimately sentenced him to 25 years of imprisonment on the sex trafficking conspiracy count and to concurrent sentences of 10 years on all other counts.[3] (Amended J., Docket No. 9-cr-619, ECF No. 515; Resentencing Tr. at 12:4–13:22, 25:17-26:15; Fourth Addendum to the PSR at 2-3.)

Whaley, represented by a new appellate counsel, James M. Branden, Esq., appealed the amended judgment. In a brief submitted by counsel, Whaley argued that the newly imposed sentence was procedurally and substantively unreasonable. (Docket No. 17-1562, ECF No. 135.) Whaley also submitted a supplemental pro se brief to the Second Circuit, in which he challenged both his sentence and the underlying conviction. (ECF No. 141.) In his pro se brief, he argued, inter alia, that the Court failed to follow the Second Circuit's mandate to articulate sufficient reasoning for the aggravated sexual abuse enhancement. (Id.)

The Second Circuit affirmed the amended judgment in a summary order, holding that the sentence was both procedurally and substantively reasonable. See United States v. Rivera, 758 Fed. App'x 148, 152-53 (2d Cir. 2018), cert. denied, 139 S. Ct. 1612 (2019). The Second Circuit held that Judge Feuerstein complied with its prior mandate because at resentencing, she provided

---

[3] During the resentencing hearing, Judge Feuerstein did not explicitly adopt the PSR or calculate Whaley's criminal history category, total offense level, and resulting sentencing range. However, Judge Feuerstein did file a statement of reasons for his new sentence "that expressly adopted the adopted the findings in the" PSR and that also "calculated [his] total offense level, criminal history category, and resulting Guidelines range." United States v. Rivera, 758 Fed. App'x 148, 151 (2d Cir. 2018), cert. denied, 139 S. Ct. 1612 (2019). In his subsequent appeal, the Second Circuit rejected Whaley's argument that the manner in which Judge Feuerstein addressed these issues rendered his sentence procedurally unreasonable. See id.

explicit reasons for the application of the aggravated sexual abuse enhancement.  See id. at 153. The Second Circuit also rejected Whaley's pro se claims, finding that where they were previously brought on appeal and rejected, they were precluded by the mandate rule, and that they were otherwise procedurally barred as they should have been raised on his first direct appeal.  See id. Petitioner sought writ of certiorari from the Supreme Court, but it was denied.  See Whaley v. United States, 139 S. Ct. 1612 (2019).

D.     **Procedural History**

On April 17, 2020, Whaley sought post-conviction relief from the Court by filing the present 28 U.S.C. § 2255 Petition.  In support, Whaley claims that he was denied his Sixth Amendment right to effective assistance of counsel, alleging multiple errors by his various counsels at different stages of the case.  (Pet. at 17-46.)  Whaley argues that Gaffey and Latif were ineffective as his trial and appellate counsel respectively because (1) they failed to move to dismiss the superseding indictment based on what he alleges were "constructive amendments," and (2) they failed to investigate and argue that his sex trafficking and forced labor conspiracy convictions under the TVPRA violated the Ex Post Facto Clause.  (Id. at 17-39.)  He further argues that Hoerger provided ineffective counsel at resentencing by failing to raise certain challenges to his Sentencing Guideline calculation.   (Id. at 40-46.)   Petitioner further alleges that defense counsel was ineffective for failing to argue that his due process rights were violated when the Government allegedly leaked the grand jury minutes and the information about his prior criminal history to the media.  (Id. at 54-62.)  Furthermore, Petitioner alleges that the Second Circuit erred in deciding his appeal because it did not consider the Supreme Court decision in Elonis v. United States, 575 U.S. 723 (2015) when it addressed his challenge to the jury instructions on the sex trafficking and forced labor counts.  (Id. at 47-53.)

7

In response to Whaley's Petition, the Government asserted that all his claims pertaining to his conviction were untimely because the Second Circuit affirmed his convictions in 2015. According to the Government, the one-year statute of limitation for raising those expired one year after Supreme Court denied certiorari on Petitioner's first appeal.  (Resp. at 2-3, 5, ECF No. 553.)

In his reply, Whaley argued that his Petition was timely because the one-year statute of limitation should not start to run until the Supreme Court denied certiorari after his second appeal. (Reply at 2, ECF No. 561.)

On August 10, 2020, Petitioner moved this Court for a permission to file a Supplemental 2255 Petition, (ECF No. 560), raising an additional claim of ineffective assistance of counsel based on counsel's failure to raise an additional "constructive amendment" argument.  (Suppl. Pet. at 5-14, ECF No. 563.)  Petitioner now also alleges that the 25-year prison sentence he received for his sex trafficking conspiracy conviction violates the Eighth Amendment.  (Id. at 14-19.)  The Government responded to the Supplemental Petition, asserting that the ineffective assistance of counsel claim was both untimely and without merit, and that Petitioner failed to establish an Eighth Amendment violation.  (Suppl. Resp. at 1-5, ECF No. 565.)

On May 6, 2021, Petitioner filed a pro se "Extraordinary Motion for Bail Pending Resolution on Section 2255 Motion."  (Extraordinary Mot., ECF No. 584.)

On November 15, 2021, Petitioner filed an "Addendum" to his Section 2255 Petition, adding an argument that his defense attorneys were ineffective because they did not object to the imposition of SORNA requirements on him.  (ECF No. 597.)  Subsequently, on March 9 and 23, 2022, Petitioner wrote to the Court seeking to amend his § 2255 filings and add additional arguments concerning alleged ineffective assistance of trial and appellate counsel for failure to challenge the Superseding Indictment.  (ECF Nos. 603, 604.)

8

## II.    DISCUSSION

### A.    Legal Standard for Section 2255 Petitions

Section 2255 permits a prisoner in federal custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "A petition for relief under Section 2255 shall only be granted for a constitutional error when the sentencing court lacked jurisdiction or when a miscarriage of justice arises due to an error of law or fact which created a fundamental defect."  Lopez v. United States, 792 Fed. App'x 32, 35 (2d Cir. 2019) (summary order) (citations omitted).  Relief under Section 2255 is reserved "for prejudicial errors that are so grave, they result in a complete miscarriage of justice."  Kassir v. United States, 3 F.4th 556, 564 (2d Cir. 2021) (internal quotation marks, brackets and citations omitted). "[Section] 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)).

Because Whaley appears pro se, the Court construes his submissions liberally and interprets them to raise the strongest arguments they may suggest.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

### B.    Timeliness

The Government contends that the Petition is "untimely as a matter of law" in regard to Whaley's conviction and trial-related claims because the petition was not filed within one year after the Supreme Court refused, on May 31, 2017, to grant certiorari concerning Second Circuit's

decision in the first appeal, which affirmed Whaley's convictions. (Resp. at 2.) The Government argues that when the Second Circuit affirmed the convictions notwithstanding its vacatur of the sentence, the clock for the purposes of § 2255 started. (Id.) Petitioner argues in his reply brief, and this Court agrees, that the Government's position is contradicted by the Second Circuit's precedent set forth in <u>Gonzalez v. United States</u>, 792 F. 3d 232 (2d Cir. 2015).[4]

Generally, a petition brought pursuant to § 2255 must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). In <u>Gonzalez</u>, the Second Circuit considered when this one-year clock starts where there has been an affirmance of the conviction, but a remand for a substantive proceeding such as, in that case, a restitution calculation. 792 F.3d at 234. The Second Circuit held that one-year clock did not run until the conclusion of all substantive proceedings.

Whaley's petition is timely in all aspects as it was appropriately filed after the conclusion of all substantive proceedings—<u>de novo</u> sentencing on remand and the subsequent exhaustion of direct appellate review. <u>See Rivera</u>, 799 F. 3d at 189; <u>see also Marmolejos v. United States</u>, 789 F.3d 66, 70 (2d Cir. 2015) (noting that "when a judgment is entered on account of new substantive proceedings involving reconsideration of either the defendant's guilt or his appropriate punishment, it is a new judgment for purposes of AEDPA."). Importantly, Whaley is the type of a <u>pro se</u> litigant whom the Second Circuit had in mind in <u>Gonzalez</u> when it established a bright-line rule "that the litigant may wait until the substantive proceedings are completed in the district court before collaterally attacking his conviction." 792 F.3d at 238 n.31. Accordingly, the Court

---

[4] The District Court cases cited by the Government in support of their argument that Whaley's claims concerning his conviction should be time-barred are pre-<u>Gonzalez</u> or rely on pre-<u>Gonzalez</u> case law. (Resp. at 2.)

agrees with Whaley that his Section 2255 petition on April 17, 2020 was timely in respect to all claims raised in it.

## C.   **Procedural Bars**

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks and citation omitted).  First, "[i]t is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (internal quotation marks and citations omitted).  "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." Yick Man Mui, 614 F.3d at 53 (citation omitted); see also Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006) (the "rule holds that where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." (internal quotation marks and citations omitted)).

Second, generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003); see also Yick Man Mui, 614 F.3d at 54.  However, claims of ineffective assistance of counsel "may appropriately be raised for the first time in a Section 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504-509 (2003)).

### D.    Ineffective Assistance of Counsel Claims

In his instant Petition, Whaley alleges multiple instances of ineffective assistance of counsel ranging from the time of indictment to his second appeal.  Notably, a number of his claims, as elaborated further below, are styled as ineffective assistance of counsel but effectively attempt to relitigate substantive legal arguments that Whaley previously raised and which were rejected on direct appeal.  The Government maintains that Whaley cannot use this strategy to circumvent the mandate rule.  (Resp. at 3-7.)

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both prongs of the Strickland test, demonstrating that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing norms" and (2) Petitioner suffered prejudice as a result of the counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 692 (1984).  The "Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel flounder on that standard."  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

The first prong calls on a petitioner to demonstrate that counsel acted outside of the wide range of reasonable professional assistance and made errors so serious as to fail to function as counsel guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687-89.  In analyzing this prong, a court must be objective and "eliminate the distorting effects of the hindsight" and "evaluate the conduct from counsel's perspective at the time."  Id. at 689.  Furthermore, the court is to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.

Some of Whaley's claims allege that appellate counsel was ineffective.  Strickland applies to those claims as well.  See Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) ("Although

12

Strickland addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the Strickland two-prong test in assessing the effectiveness of appellate counsel.")  An "[a]ppellate counsel does not have a duty to raise all colorable claims on appeal; rather, counsel should use reasonable discretion to determine which claims constitute a defendant's best arguments for obtaining a reversal of a conviction."  Waiters v. United States, 472 F.  Supp. 3d 7, 15 (E.D.N.Y. 2020) (internal quotation marks and citations omitted).

The second prong of the Strickland test requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  Crucially, the petitioner must show that "[t]he likelihood of a different result [was] substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  Whaley also alleges ineffective assistance of counsel at sentencing.  To establish prejudice in this context, the petitioner must demonstrate a reasonable probability that, but for counsel's deficiencies with respect to the sentencing matters, the petitioner would have received a lesser term of imprisonment.  See Glover v. United States, 531 U.S. 198, 203 (2001).

If the petitioner makes an insufficient showing on one of the prongs, there is no need for the court to address the other.  See Strickland, 466 U.S. at 697.

1.   **Claim of Ineffectiveness of Trial and Appellate Counsel for Failure to Seek Dismissal Based on Constructive Amendments.**

Petitioner alleges that his trial counsel, Gaffey, and his appellate counsel, Latif, were ineffective because they failed to seek a dismissal on the basis of alleged constructive amendments of the Superseding Indictment.  (Pet. at 17-28.)  In support of his argument, Petitioner lists various

13

instances of alleged discrepancies between the Superseding Indictment, the jury charge, and the statutory text. (Id.)

Petitioner also seeks to amend this claim by filing two supplemental pleadings on March 9 and March 23, 2022. (ECF Nos. 603, 604.) Construing Whaley's pro se submissions liberally and joining the "courts in this Circuit [which] routinely treat a pro se petitioner's supplemental submission as a motion to amend the initial petition," Geritano v. United States, No. 03-CR-970, 2023 WL 3499511, *5 (E.D.N.Y. May 17, 2023), the Court grants the two motions to amend the habeas petition and considers the claims advanced therein on the merits below.

There are "two constitutional requirements for an indictment: first, that it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, that it enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. D'Amelio, 683 F.3d 412, 416-17 (2d Cir. 2012) (quoting United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) (internal quotation marks, brackets, and citations omitted)); see also United States v. Khalupsky, 5 F.4th 279, 293 (2d Cir. 2021). "To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" D'Amelio, 683 F.3d at 416 (2d Cir. 2012) (quoting United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988)). While a constructive amendment constitutes per se reversible error, the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." United States v. Rigas, 490 F.3d 208, 228 (2d Cir. 2007) (internal quotation marks, emphasis and citation omitted). "The

14

'core of criminality' is the 'essence of [the] crime,' meaning that mere differences in 'how a defendant effected the crime' are insufficient to constitute constructive amendment." United States v. Morgan, No. 22-2798, 2024 WL 747904, at * 1 (2d Cir. Feb. 23, 2024) (quoting D'Amelio, 638 F.3d at 418). "Whereas a defendant alleging a constructive amendment must establish that the evidence or the jury charge on which he was tried broadens the possible bases for conviction beyond the indictment voted on by the grand jury, a defendant alleging a variance must establish that the evidence offered at trial differs materially from the evidence alleged in the indictment." United States v. Dove, 884 F.3d 138, 149 (2d Cir. 2018). Such "variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." D'Amelio, 683 F.3d at 417. A reversal based on a variance is warranted only where "the defendant shows both: (1) the existence of a variance, and (2) that 'substantial prejudice' occurred at trial as a result." Dove, 884 F.3d at 149.

The constructive amendment arguments that Whaley asserts his trial and appellate counsel should have advanced are meritless. Accordingly, these ineffective assistance claims all fail under both prongs of Strickland. Trial and appellate counsel did not act outside of the wide range of reasonable professional assistance by not pursuing these arguments, and there is no reasonable probability that these arguments would have resulted in the dismissal of any counts.[5]

---

[5] While Whaley styles these arguments in terms of allegedly constructive amendments, he also appears at times to be arguing that the Superseding Indictment was simply insufficient and should have been the subject of a motion to dismiss because the Superseding Indictment failed to include language from the relevant statutory provisions. Even if the Court were to construe his papers to raise such arguments, those arguments are also meritless, and counsel was not ineffective for not pursuing them. Importantly, a valid indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "For an indictment to fulfill the function of assuring that the defendant is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." United States v. Montague, 84 F.4th 533, 535-36 (2d Cir. 2023) (internal quotation marks, brackets, ellipsis and citation omitted). "[I]ndictments typically need do little more than to track the language of the statute charged and state the approximate time and place of the alleged crime." United States v. Raniere, 384 F. Supp. 3d 282, 298 (E.D.N.Y. 2019) (internal quotation marks and citations omitted).

Whaley asserts that "essential elements" were omitted from the superseding indictment, which denied him notice of charges against him.  (Pet. at 17-28.)

First, Whaley maintains that the indictment was constructively amended because the Superseding Indictment did not include the phrase "or physical restraint" for the forced labor conspiracy charge under 18 U.S.C. § 1589(a)(4) even though that phrase is in the statute and that phrase was included in the jury charge, (Trial Tr. 2125, ECF No. 427).  This argument, however, is meritless as the omission of the phrase "or physical restraint" from the Superseding Indictment was not a constructive amendment.

The Forced Labor Statute, 18 U.S.C. § 1589, states:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
>> (1) by means of force, threats of force, <u>physical restraint</u>, or <u>threats of physical restraint</u> to that person or another person;
>>
>> (2) by means of serious harm or threats of serious harm to that person or another person;
>>
>> (3) by means of the abuse or threatened abuse of law or legal process; or
>>
>> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or <u>physical restraint</u>,
>
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589 (emphasis added).

The Superseding Indictment charged Whaley and his co-defendants with conspiring to:

(a) provide and obtain the labor and services of persons, to wit: the Latin American women, by means of (i) force, threats of force, <u>physical restraint and threats of physical restraint</u> to those persons and other persons, (ii) serious harm and threats of serious harm to those persons and other persons, (iii) the abuse and threatened

16

abuse of law and legal process, and (iv) a scheme, plan and pattern intended to cause those persons to believe that,  if they did not perform such labor and services, <u>those persons and other persons would suffer serious harm</u>, and (b) benefit, financially and by receiving things of value, from   participation   in   a venture which had engaged in the providing and obtaining of labor and services by any of such means, knowing, and in reckless disregard of the fact, that said venture had engaged in the providing and obtaining of labor and services by any of such means, contrary to Title 18, United States Code, Section 1589 (2009).

(Superseding Indictment ¶ 19 (emphasis added).)

Whaley seizes on the indictment's failure to include the "or physical restraint" language from § 1589(a)(4).  The omission of this language from the indictment was not a constructive amendment given that the Superseding Indictment tracked the statutory language of § 1589(a)(i) and explicitly referenced "physical restraint and threats of physical restraint" in § 1589(a)(1).  <u>See</u> <u>United States v. Mickey</u>, 897 F.3d 1173, 1183 (9th Cir. 2018) (finding that similar omission of certain statutory language from an indictment charging sex trafficking under 18 U.S.C. § 1591 did not constitute a constructive amendment and stressing that defendant could not "show prejudice" as the "terms of the statute were well known and there is not a credible argument that [defendant] would have approached his defense any differently" had the indictment included the omitted language).  The Superseding Indictment gave Whaley notice of the core of criminality to be proven and this omission did not "so modify essential elements of the offense charged that there is a substantial likelihood that" he "may have been convicted of an offense other than that charged in the indictment."  <u>D'Amelio</u>, 683 F.3d at 416; <u>see also</u> <u>Morgan</u>, 2024 WL 747904, at *1 ("Ultimately, the essential inquiry is whether the deviation between the facts alleged in the indictment and the proof underlying the conviction undercuts the constitutional requirements of the Grand Jury Clause: allowing a defendant to prepare his defense and avoid double jeopardy." (internal quotation marks and citations omitted)).

Next, somewhat misleadingly, Whaley argues that crucial <u>mens</u> <u>rea</u> elements were omitted from the conspiracy counts.  (<u>Id.</u> at 27).  However, when comparing the superseding indictment, jury charge, and the text of the statute, Petitioner's arguments fail on the merits.

With respect to the sex trafficking conspiracy (Count 14), Whaley argues that the superseding indictment omitted the required element of "knowingly" because it was not repeated at the beginning of each subparagraph of the charges.  (<u>Id.</u> at 19).  The sex trafficking charges (Counts 15 through 17) in the Superseding Indictment charged Petitioner with substantive sex trafficking under 18 U.S.C. §§ 1591(a)(1) and (a)(2), which contains a <u>mens</u> <u>rea</u> of "knowingly." The indictment included this <u>mens</u> <u>rea</u> requirement; the relevant counts in the Superseding Indictment contain the phrase "knowingly and intentionally" before listing the elements of these offenses.  For the count of conspiracy to commit sex trafficking (Count 14) in violation of 18 U.S.C. § 1594(c), Petitioner was charged with "<u>knowingly and intentionally</u> conspir[ing] to (a) recruit, entice, harbor, transport, provide, obtain and maintain one or more persons [to engage in commercial sex acts] and (b) benefit, financially and by receiving things of value, from participation in a venture which engaged in one or more such acts …" (Superseding Indictment at 13 (emphasis added).)  Counts 15 through 17 (substantive sex trafficking) in the Superseding Indictment also state that Whaley did "<u>knowingly and intentionally</u> (a) recruit, entice, harbor, transport, provide, obtain and maintain one or more persons [to engage in commercial sex acts] and (b) benefit, financially and by receiving things of value, from participation in a venture which engaged in one or more such acts . . . ."  (<u>Id.</u> (emphasis added).)  Similarly, in the jury charge, the Court provided a clear instruction that the defendant had to "knowingly and willfully" become a member of the charged conspiracy and also that knowledge was an essential element of the underlying substantive offenses.  (Trial Tr. 2082-90, 2121-24, ECF Nos. 427, 426.)  While the

18

precise phrasing and syntax of the superseding indictment, statute, and the jury charge are not identical, all three addressed the essential elements of the offenses, including the <u>mens</u> <u>rea</u> requirements.

Petitioner also asserts that a constructive amendment occurred because the word "agreement" was included in the jury instructions, but was omitted from the Superseding Indictment's sex trafficking conspiracy count (Count 14).  (ECF No. 603 at 1-8.)  This argument is patently meritless.  Count 14 charged Petitioner with violating 18 U.S.C. § 1594(c) which states that "[w]hoever conspires with another to violate section § 1591 shall be fined under this title, imprisoned for any term of years or for life, or both."  The word "agreement" appears nowhere in the charging statute and as such, it was certainly not required to be in the Superseding Indictment. While the jury charge explicitly included the word "agreement" in explaining what constitutes a conspiracy, (Trial Tr. 2082:19-21, 2083:10-13, 2084:12-15), the absence of that term in the superseding indictment does not constitute a constructive amendment.  Petitioner makes similar claims challenging other minor language and syntax discrepancies concerning the other counts of conviction.[6]  However, none of these points affected the notice of charges against him and constituted constructive amendments.[7]  Any alleged discrepancies in the language of the Superseding Indictment, statute, and jury charge did not modify the elements of the charged offenses and there is not a significant likelihood that the jury convicted Petitioner on the offenses

---

[6] Petitioner also claims that the Superseding Indictment's forced labor conspiracy count (Count 18) and substantive labor conspiracy counts (Counts 19 through 24) were constructively amended because the Superseding Indictment did not use the word "knowingly" twice and did not repeat "by means" to preface each subsection of the charging statute, 18 U.S.C. § 1589.  (Pet. at 21-22; ECF No. 604 at 1-5.)  These minor phrasing and syntax discrepancies did not constitute a constructive amendment or deprive Petitioner of notice of the charges against him.  Additionally, none of Whaley's arguments would have presented a valid basis for moving to dismiss the indictment on sufficiency grounds. The same logic applies to the claims raised by Whaley in his Supplemental Petition regarding the discrepancies between the Superseding Indictment, statute, and jury instructions concerning the offenses of transporting and harboring aliens and the conspiracy to commit those offenses.  (Suppl. Pet. at 6-14.)

other than those with which he was charged in the Superseding Indictment.  See D'Amelio, 683 F.3d 412 at 416-17.

Petitioner's trial and appellate counsel were not ineffective for failing to bring meritless motions or arguments without a reasonable chance of success, and, in any event, because any such motions were futile, Petitioner was also not prejudiced as a result by counsel's failure to pursue these arguments.  See Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled."  Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690)).  With this, the claim fails on both Strickland prongs.

> **2.    Claim of Ineffective Assistance of Trial and Appellate Counsel for Failing to Seek Dismissal of Conspiracy Counts based on the Ex Post Facto Clause.**

Petitioner claims that Gaffey and Latif were ineffective because they failed to argue that his convictions for the sex trafficking and forced labor conspiracy counts under the TVPRA violated the Ex Post Facto Clause.  (Pet. at 29-39).

The precise arguments Whaley claims counsel should have raised are difficult to discern, but he appears to assert that the Ex Post Facto Clause was violated because: (1) there was insufficient evidence of post-enactment criminal conduct to support his convictions; and (2) the jury, in fact, convicted him based solely on pre-enactment conduct (or that there was at least a substantial likelihood that the jury's verdict was based solely on pre-enactment conduct).

At the outset, it must be stressed that the Second Circuit rejected an almost identical argument that Whaley raised in the pro se appellate brief he filed for his first direct appeal.  In his pro se appellate brief, Whaley argued his convictions violated the Ex Post Facto Clause and cited testimony from certain witnesses in support of that argument.  (Pro Se Appellate Br., Docket. No.

13-2864 (2d Cir.), ECF No. 158-1 at 10-20.)   The Second Circuit considered this argument and found it to be without merit.  See Rivera, 799 F.3d at 189.  In his petition, Whaley again argues that his convictions violate the Ex Post Facto Clause, but this time cites testimony from different witnesses. (Pet. at 29-39.)   The Second Circuit's rejection of Whaley's earlier Ex Post Facto argument makes clear that his current Ex Post Facto argument is also meritless.   In rejecting Whaley's Ex Post Facto challenge on appeal, the Second Circuit necessarily concluded that there was sufficient evidence of post-enactment conduct to support the TVPRA convictions.[8] Additionally, the Second Circuit also necessarily rejected Whaley's suggestion that the evidence and instructions at trial permitted the jury to convict Whaley based on solely on pre-enactment conduct.[9]

Moreover, even assuming for the sake of argument that the Second Circuit's earlier rulings do not dispose of the largely identical Ex Post Facto claims raised in the Petition, as explained below, those arguments clearly fail on the merits.

"It is well-settled that when a statute is concerned with a continuing offense," such as conspiracy, "the Ex Post Facto clause is not violated by application of a statute to an enterprise that began prior to, but continued after, the effective date of the statute."  United States v. Monaco,

---

[8] In his pro se brief to the Second Circuit, Whaley also challenged the sufficiency of his TVPRA convictions on the sex trafficking and forced labor conspiracy counts.  (Docket No. 13-2864 (2d Cir.), ECF No. 137-1 at 10-20.)  He further, through counsel, challenged the sufficiency of his convictions on the TVPRA substantive forced labor counts. (ECF No. 125 at 23-23.)  The Second Circuit considered and rejected these claims.  See Rivera, 799 F.3d at 189.  To the extent Whaley now attempts to relitigate his sufficiency arguments, he is precluded by the mandate rule.  Moreover, the Second Circuit's rejection of these sufficiency arguments further shows that the sufficiency aspect of his Ex Post Facto argument is meritless.

[9] The Court finds that, given the Second Circuit's decision, the mandate rule also precludes Whaley from relitigating this Ex Post Facto argument in the guise of an ineffective assistance claim.  See United States v. Pitcher, 559 F.3d 120, 123-24 (2d Cir. 2009), cert. denied, 558 U.S. 1137 (2010); see also United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)), cert. denied, 534 U.S. 1008 (2001).  Moreover, even if the mandate rule does not apply, this claim fails on other grounds.  The Second Circuit's decision confirms that this argument is meritless as does this Court's analysis of the record below.

194 F.3d 381, 386 (2d Cir. 1999), cert. denied, 529 U.S. 1028 (2000), 529 U.S. 1077 (2000).  "A conviction for a continuing offense straddling enactment of a statute will not run afoul of the Ex Post Facto clause unless it was possible for the jury, following the court's instructions, to convict exclusively on pre-enactment conduct."  Id. at 386 (internal quotation marks and citations omitted).

First, the evidence at trial was clearly sufficient to support to Whaley's TVPRA conspiracy convictions.  Whaley's petition points to a list of selected witnesses who testified about his involvement in the conspiracy prior to the enactment of TVPRA, (Pet. at 32-33), but omits the testimony of witnesses who provided information about relevant acts that both he and his co-conspirators committed after December 23, 2008 and through August 2009.

For example, one bartender testified that she began working at one of Rivera's bars in March 2009 and that at that time, Whaley worked there and that he drove the van with the waitresses, even though she herself was driven by him only once.  (Trial Tr. 355:23-25, 375:10-376:7; ECF No. 413.)  This witness saw waitresses dancing with the customers at the bar while "topless" and "lifting skirts."  (Id. at 375:9-19.)  She also observed sexual contacts between the waitresses and the customers.  (Id. at 375:20-25.)

Another witness testified that she worked as a waitress in the subject bars from January 2006 through January 2009, that Whaley drove her to and from work in his van, and that he sexually assaulted her in September 2008 in his van.  (Id. at 1020:17-22, 1024:19-20, 1048:15-1049:5, ECF No. 417.)  She testified that Whaley sexually approached her "almost all the time." (Id. at 1047:20-21.)  Another waitress who worked at the bar until it was raided in August 2009 testified that she was typically driven home by Whaley and was sexually assaulted by him.  (Id. at 1174:8-1199:7, ECF No. 418.)

Besides those examples of Whaley's acts and conduct in the time period following the

enactment of TVPRA, Jasmin Rivera testified that she conspired with Whaley and his co-defendants to commit sex trafficking and forced labor offenses.  (Id. at 482, 506, ECF No. 414.) Furthermore, a security guard at one of the bars testified that Whaley was Antonio Rivera's "right-hand man" and ordered the waitresses around in Rivera's absence.  (Id. at 1337.)

Additionally, there was ample evidence at trial that Rivera continued to commit acts in furtherance of the sex trafficking and forced labor conspiracies up until the bars' forced closure in August 2009.  For example, the jury heard from an undocumented immigrant from Guatemala who testified that she worked at Rivera's bar from 2007 until August 2009, when the bar was shut down by the Government.  (Id. at 1174:8-1199:7, ECF No. 418.)  The witness detailed her experiences working at the bar, her interactions with Rivera and Whaley, including the instances when she was made to have sexual intercourse in the basement of the bar and was groped by the patrons, her complaints to Rivera and his response to her that it was "part of [her] job," as well as his instructions to her not to call the police because she was undocumented.  (Id. at 1176:3-1177:5.) Another victim testified at trial that she was working at Rivera's bar in 2009 and that the bar customers paid for sex with the waitresses inside the bar.  (Id. at 1271:11-12. 1283:10-23, ECF No. 419.)  Another witness, a bartender at one of Rivera's locations, testified that she started working in March 2009 and saw customers give Rivera money and then sexually touch waitresses. (Id. at 284:14-300:25, ECF No. 437.)  This witness also described how Rivera instructed her to take $200 from a patron who then went to the kitchen with the heavily intoxicated waitress, describing that she later observed the waitress leaving the kitchen while "her hair was really messed up, her skirt was under, flipped, and she was pretty wasted."  (Id. at 313:17-20.)  This witness also testified that while the patron and the waitress were in the kitchen, Rivera told her not to let others in there.  (Id. at 312:21-313:5.)

23

Given the overwhelming evidence of Whaley's involvement in the conspiracy during the pre-enactment period, his membership and participation in the ongoing conspiracy is "presumed to continue until the last overt act by any of the coconspirators, unless the defendant proves that conspiracy was terminated or that he took affirmative steps to withdraw." United States v. Flaharty, 295 F.3d 182, 192 (2d Cir. 2002), cert. denied, 537 U.S. 936 (2002). Whaley presented no evidence that he terminated his participation in the conspiracy or took such steps to withdraw. Rather, the evidence overwhelmingly showed the contrary – Whaley continuously participated in the conspiracy from the beginning of his work for Rivera through August 2009 when the Government shut down the bars. There was more than ample evidence concerning the post-enactment period for a jury to convict Whaley.

Second, Whaley's argument that the jury convicted him solely based on pre-TVPRA evidence is pure speculation and does not give rise a viable Ex Post Facto Claim. Whaley has not shown that it "was possible for the jury, following the court's instructions, to convict exclusively on pre-enactment conduct." Monaco, 194 F.3d at 386 (internal quotation marks and citation omitted) (emphasis in original). Notably, Whaley does not even point to any flaws in the jury instructions on this point. In any event, given the evidence at trial as well as the jury instructions given by Judge Feuerstein—which clearly charged that the TVPRA counts concerned conduct during the time period between December 23, 2008 and August 10, 2009, (Trial Tr. 2121:1-13)—Whaley's speculative claim that the jury convicted him solely on pre-enactment conduct is patently insufficient to establish an Ex Post Facto claim. See id.

Because the Ex Post Facto arguments Whaley contends trial and appellate counsel should have advanced are meritless, his ineffective assistance claims premised on those arguments necessarily fail on both Strickland prongs.

24

### 3.    Claim of Ineffective Assistance for Failure to Argue Due Process Violation.

Petitioner asserts that that the Government violated his right to Due Process by allegedly leaking sealed documents to the media before his arrest, eliciting testimony about his criminal history, and publicly disclosing it in a Rule 404 (b) motion.  (Pet. at 54-62.)  He also argues that his counsel was ineffective for failing to seek the dismissal of the indictment because of these alleged violations.  (Id. at 61-62.)  Because the substantive argument underlying this ineffective assistance claim was raised in Whaley's pro se appellate brief, (Docket. No. 13-2864 (2d Cir.), ECF No. 81), and rejected on direct appeal, see Rivera, 799 F. 3d at 189, the mandate rule precludes Whaley from relitigating it.  See Yick Man Mui, 614 F.3d at 53-54.  Moreover, even assuming for the sake of argument that the mandate rule does not apply, this ineffective assistance claim would fail on the merits. Whaley cannot prevail, under either prong of Strickland, given that – as the Second Circuit has already concluded – the argument that Petitioner claims his trial and appellate counsel should have raised is meritless.

### 4.    Claim of Ineffective Assistance of Counsel at Sentencing.

Petitioner claims that his resentencing and first appellate counsel were ineffective because they failed to argue that the base offense level for his sex trafficking conspiracy conviction (Count 14) was incorrectly calculated in the PSR and by the Court.  (Pet. at 40-46.)  Whaley argues that the PSR and Judge Feuerstein, who adopted the PSR for his resentencing, improperly applied U.S.S.G. § 2A3.1 in calculating his base offense level to be 30.[10]  (Id. at 43-46.)  According to Whaley, his base offense level should have been 14 pursuant to U.S.S.G. § 2G1.1(a)(2).  (Id. at

---

[10] Whaley also appears to assert that the PSR improperly calculated his base offense level as 34 per U.S.S.G. § 2G1.1(a)(1).  (Pet. at 40.)  This argument, however, is belied by the record, as the original and amended PSR calculated his base offense level to be 30 (not 34).  (PSR ¶¶ 86, 93, 100, 107, 114; Fourth Addendum to PSR at 2-4; Resp. at 5.)

43.)  Whaley also argues that the PSR should not have applied the 4-level aggravated sexual abuse enhancement to the sex trafficking conspiracy count.  (Pet. at 45-46.)

Initially, Petitioner's claim of ineffective assistance as to Latif, his first appellate counsel, is moot because, following the Second Circuit's order on the first appeal, Petitioner's sentence was vacated, and the case was remanded for full resentencing.  Latif had no involvement in resentencing and second appeal.

Whaley's claim that Hoerger, who represented him at resentencing, was ineffective fails on both Strickland prongs.  According to Whaley, Hoerger should have argued that U.S.S.G. § 2G1.1(a)(2)—and not § 2A3.1(a)(2)—should have been applied to Whaley's base level offense calculation for the sex trafficking conspiracy count.  (Pet. at 43-46.)

Whaley's objection to the PSR's cross-reference application of U.S.S.G. § 2A3.1 is without merit.  U.S.S.G. § 2A3.1 applies where the defendant's conviction involved conduct such as criminal sexual abuse or attempted criminal sexual abuse.  Unless the defendant was convicted of a crime in violation of 18 U.S.C. § 2241(c), U.S.S.G. § 2A3.1(a)(2) sets the base offense level to 30.  To the extent that Whaley is arguing that his conviction did not include the described prohibited conduct of criminal sexual abuse or attempted sexual abuse, this is belied by the record.  Witnesses testified at trial that Whaley sexually abused them.  (See, e.g., Trial Tr. 1174:8-1199:7, ECF No. 418.)  At resentencing, Judge Feuerstein specifically found that Whaley "sexually assaulted" at least three women "after they were unconscious."  (Resentencing Tr. at 14.)

Additionally, Whaley's argument that § 2A3.1(a)(2) was applicable was initially advanced by Whaley's counsel at his first sentencing and was rejected by Judge Feuerstein.  Hoerger's decision not to pursue this argument again at resentencing—when it had been already rejected by Judge Feuerstein—does not fall below the accepted norms of professional conduct and could

26

plausibly present a strategic choice.  Whaley's speculation that Hoerger did not review the filings from the first sentencing is insufficient to show that Hoerger's representation fell below the accepted norms of professional conduct.

Whaley's claim also fails on the second <u>Strickland</u> prong.  As stressed above, even if Hoerger had raised this argument, it would not have been successful.

Whaley further claims that Judge Feuerstein erred in applying the four-level enhancement for aggravated sexual abuse.[11]  (Pet. at 45-46.)  Whaley previously advanced the very same substantive argument in his <u>pro se</u> appellate brief to the Second Circuit, arguing that Judge Feuerstein failed to follow the Second Circuit's mandate at resentencing.  (Docket. No. 17-1562, ECF No. 84 at 18-21.)  The Second Circuit rejected this argument and noted that "the district court explicitly found that the aggravated sexual abuse enhancement applied because he sexually assaulted three of the waitresses after they were rendered unconscious by alcohol."  <u>Rivera</u>, 758 Fed. App'x at 153.  As the Second Circuit found that the aggravated sexual abuse enhancement was proper, the mandate rule precludes this argument. <u>See</u> <u>Yick Man Mui</u>, 614 F.3d at 53.  And, even if the mandate rule does not apply, Whaley's claim that counsel was ineffective for not raising this argument would fail on both prongs of <u>Strickland</u>.  The Second Circuit already rejected this argument on the merits, and this argument is clearly meritless.

### 5.     Claim of Ineffective Assistance of Counsel for Failure to Oppose SORNA.

In a supplemental addendum, Petitioner argues that his appellate counsel was ineffective because she failed to argue before the Second Circuit that Petitioner was not subject to SORNA.

---

[11] Notably, Petitioner does not claim that he received ineffective assistance of counsel in connection with the application of the aggravated sexual abuse enhancement, but rather simply argues this as a direct claim, asserting that Judge Feuerstein erred in finding this enhancement applicable.  (Pet. at 45-46.)  In any event, even if the Court were to construe this argument as an ineffective assistance claim, it would fail on both prongs as the Second Circuit already rejected this underlying argument on the merits.

(Suppl. Addendum at 1-8.)  Construing this addendum liberally and interpreting it as a motion to amend the original petition instead of making a supplemental filing, the Court grants the motion and will consider this claim on the merits.  However, the argument fails as Petitioner was clearly subject to SORNA as he was convicted of a sex offense, which is defined to include "a Federal offense . . . under section 1591 . . . of Title 18 . . . [or] a conspiracy to commit [such] offense."  34 U.S.C. § 20911(5)(A)(iii), (v).  Defense counsel was not ineffective for not making a frivolous and meritless argument.  See Jameson v. Coughlin, 22 F. 3d at 429-30.

## E.   Alleged Instructional Error Based on Elonis v. United States

Next, Petitioner claims that, in considering the jury instructions on appeal, the Second Circuit erred because its decision affirming his conviction did not apply the Supreme Court's decision in Elonis v. United States, 575 U.S. 723 (2015).  (Pet. at 47-53.)  Specifically, Petitioner asserts that the jury instruction given at his trial concerning the definition of "serious harm" elements of the sex trafficking and forced labor counts was improper in light of Elonis.  (Id.)

18 U.S.C. §§ 1594 (b) and (c) make it a crime to conspire with others to violate 18 U.S.C. § 1589 (forced labor) and § 1591 (sex trafficking) respectively.

The Forced Labor Statute, 18 U.S.C. § 1589, states:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever <u>knowingly</u> benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), <u>knowing or in reckless disregard</u> of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589 (emphasis added).

The Sex Trafficking Statute, 18 U.S.C. § 1591, states:

(a) Whoever <u>knowingly</u>—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

<u>knowing</u>, <u>or</u>, except where the act constituting the violation of paragraph (1) is advertising, <u>in reckless disregard</u> of the fact, that means of force, threats of force, fraud, <u>coercion</u> described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591 (emphasis added).

Section 1591 defined "coercion" to include:

> (A) threats of serious harm to or physical restraint against any person;
>
> (B) any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
>
> (C) the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(e)(2).

In the first appeal, co-defendant Antonio Rivera challenged the jury instruction's explanation of the "serious harm" elements for these counts, (Docket No. 13-3722, ECF. No. 109 at 22-30), and Petitioner joined in that argument, (ECF No. 146 at 33.)  On direct appeal, Rivera and Whaley argued that Judge Feuerstein's instructions at trial were erroneous because she relied on a "purely subjective" standard in defining "serious harm."  (Pet. at 48.)  On direct appeal, the Second Circuit concluded that the jury instructions on the sex trafficking charges improperly emphasized the subjective component of "serious harm."  See Rivera, 799 F.3d at 186-87.  The Second Circuit explained that the "correct standard is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances."  Id.  The Second Circuit, however, concluded that, given the evidence at trial, this error was "harmless beyond a reasonable doubt."  Id. at 187. Regarding the allegation that the same erroneous instruction was provided on the forced labor counts, the Second Circuit found that argument meritless as the charging statute contains the same definition that Judge Feuerstein provided to the jury.  See id. at 187 n.5; see also 18 U.S.C. §§ 1589(a)(2), (c)(2) (defining "serious harm" as what "a reasonable person of the same background and in the same circumstances" would consider as such).

Petitioner now claims that the Second Circuit's analysis of this jury instruction failed to consider the impact of the Supreme Court's decision in <u>Elonis v United States</u>, 575 U.S. 723 (2015), which came down about three months before the Second Circuit's decision on his first appeal. (Pet. at 47-53.)

As a threshold matter, Petitioner is precluded from raising this argument in his Section 2255 motion as he could have, but did not attempt to, raise it in his appeal to the Second Circuit.

In any event, Petitioner's argument based on <u>Elonis</u> fails on the merits—<u>Elonis</u> is irrelevant to the interpretation of 18 U.S.C. §§ 1589 and 1591. In <u>Elonis</u>, the Supreme Court addressed the question of what <u>mens</u> <u>rea</u> requirement should be read into 18 U.S.C. § 875(c), a statute that criminalizes the transmission of interstate threats, but does not contain a <u>mens</u> <u>rea</u> element. <u>See</u> <u>Elonis</u>, 575 U.S. at 741. The Supreme Court held in <u>Elonis</u> that it was improper to instruct the jury in that case that the defendant's <u>mens</u> <u>rea</u> was governed by the reasonable person negligence standard because the Court concluded that a more demanding <u>mens</u> <u>rea</u> must be read into 18 U.S.C. § 875(c).[12]

Petitioner asserts that <u>Elonis</u> is relevant to the jury instructions on the counts of sex trafficking and forced labor. (Pet. at 47-53.) This argument is meritless.

Even if <u>Elonis</u>' holding may have relevance to some other statutes beyond 18 U.S.C. § 875(c), it has no relevance here. Unlike the statute in <u>Elonis</u>, the sex trafficking, 18 U.S.C. § 1591, and forced labor, 18 U.S.C. § 1589, statutes—which Whaley was convicted of conspiring to violate—both include explicit <u>mens</u> <u>rea</u> requirements. <u>See</u> 18 U.S.C. § 1589 (a) and (b), 1591 (a). Moreover, Judge Feuerstein's charge to the jury incorporated the relevant <u>mens</u> <u>rea</u> requirements.

---

[12] The Court in <u>Elonis</u> did not decide the question of what exactly this more demanding <u>mens</u> <u>rea</u> requirement should be and whether recklessness was sufficient. <u>See</u> <u>id</u>.

(Trial Tr. 2121:23-2133:12.)   Elonis—which involved a statute that did not include a <u>mens</u> <u>rea</u> element—is simply irrelevant to the sex trafficking and force labor statutes at issue here.[13]   <u>Cf.</u> <u>McKinley v. United States</u>, No. 14-60163-CR, 2018 WL 10357267, at \*9 (S.D. Fla. Feb. 9, 2018) (rejecting challenge to sex trafficking jury instruction based on <u>Elonis</u>).   Even assuming that Whaley's argument about <u>Elonis</u> is properly before this Court, it fails on the merits.

## F.   <u>Eighth Amendment Claim</u>

Petitioner's final argument is that the sentence of 25 years imposed by Judge Feuerstein on the sex trafficking conspiracy count constitutes cruel and unusual punishment prohibited by the Eighth Amendment of the U.S. Constitution.   (Suppl. Pet. at 14-19.)   This argument is meritless as Whaley fails to allege a cognizable Eight Amendment violation.

"The Eighth Amendment 'forbids only extreme sentences that are grossly disproportionate to the crime,' and, with the exception of capital punishment cases, successful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare."   <u>United States v.</u> <u>Yousef</u>, 327 F.3d 56, 163 (2d Cir. 2003) (quoting <u>Hamelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy J., concurring in part and concurring in judgment)) (internal quotation marks and citations omitted).   The Second Circuit has found that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment when based on a proper application of the Sentencing Guidelines or statutorily mandated consecutive terms."   <u>Id.</u>

---

[13] <u>Elonis</u> addressed only the <u>mens</u> <u>rea</u> element of § 875(c).  In Whaley's appeal, the Second Circuit, in considering the claim of instructional error, addressed the appropriate standard for determining when "serious harm" is established for purposes of the TVPRA sex trafficking and forced labor statutes.  The issue before the Second Circuit had nothing to do with <u>mens</u> <u>rea</u> and Whaley's attempt to connect <u>Elonis</u> to the instructional error identified by the Second Circuit on appeal is unavailing.

Whaley argues that his sentence for sex trafficking conspiracy violates the Eighth Amendment because the statute provides for a maximum sentence of life when a different statute— which Whaley claims covers similar conduct—only provides for a 25-year maximum sentence.

Whaley was convicted of conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c), which provides for a maximum sentence of life imprisonment.  Whaley compares this statute to 18 U.S.C. § 2421A, enacted in 2018, which criminalized the use of online websites to promote prostitution and sex trafficking and provides a lesser maximum sentence of 25 years imprisonment.

Given Whaley's conduct and conviction, Whaley's claim that this constitutes an Eighth Amendment violation is wholly without merit.  The Court also notes that Whaley's 25-year sentence is far less than the maximum penalty of life imprisonment, which was both the statutory maximum for his offense and his advisory Guidelines range.  The fact that another statute covering allegedly similar conduct has a lower maximum penalty does not give rise a colorable Eighth Amendment claim, particularly given that Whaley could have received 25 years even if he had been charged and convicted under 18 U.S.C. § 2421A.

Whaley also appears to assert that § 2421A was intended to lower the maximum penalty for conspiracy to violate § 1591.  (Suppl. Pet. at 17-19.)  This argument—which concerns a question of statutory interpretation and not an alleged violation of the Eighth Amendment—is, in any event, meritless.  Both 18 U.S.C. §§ 1591 (a) and 1594 (c) were unchanged by the enactment of § 2421A.

### III.    CONCLUSION

For the foregoing reasons, Whaley's Petition is DENIED.  His motion for release pending the resolution of his § 2255 Petition is also DENIED.  It is further ordered that the Clerk of the Court mark this case and the corresponding civil case, Case No. 20-cv-01863, closed.  The Court further declines to issue a certificate of appealability because Petitioner has not made a substantial showing that he was denied a constitutional right.  See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

Dated:  June 5, 2024
Central Islip, New York

                                      /s/ (JMA)
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE

34